HOLLY COOPER, SBN 197626
U.C. DAVIS IMMIGRATION LAW CLINIC
University of California, Davis School of Law
One Shields Ave., TB-30
Davis, CA 95616-8821
Tel: (530)752-6942
Fax: (530)752-0822
E-mail: hscooper@ucdavis.edu

Attorney for Petitioner
ANA BIOCINI

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BIOCINI,<br>A 91 182 333, an individual,<br>        Petitioner,<br><br>   vs.<br><br>MICHAEL MUKASEY, in his official capacity as Attorney General of the United States; MICHAEL CHERTOFF, in his official capacity as Secretary of the Department of Homeland Security; NANCY ALCANTAR in her official capacity as San Francisco Field Office Director of U.S. Immigration and Customs Enforcement, Detention and Removal; DONNY YOUNGBLOOD, in his official capacity as Sheriff of Kern County Sheriff's Department and Lerdo Detention Facility,<br><br>        Respondent(s) | Case No.<br><br>**COMPLAINT AND PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**JURISDICTION**

1. Petitioner challenges the Government's interpretation of the immigration detention statutes on constitutional and statutory grounds. She contends that the general detention statutes prohibit prolonged immigration detention of more than six months unless there is a likelihood of removal in the reasonably foreseeable future. *Demore v. Kim,* 538 U.S. 510 (2003); *Nadarajah v. Gonzales,* 443 F.3d 1069, 1078 (9th Cir. 2006); *Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005); *Ly v. Hansen,* 351 F.3d 263, 273 (6th Cir. 2004). Petitioner further argues that current detention statutes are unconstitutional because of lack of appropriate procedural protections. *See Zadvydas v. Davis,* 533 U.S. 678, 692 (2001) (prolonged detention of aliens whose removal is not reasonably foreseeable under administrative procedures presents an "obvious" constitutional problem.)

2. Secondly, Petitioner asserts that her substantive due process rights have been violated under the "state-created danger" exception. *DeShaney v. Winnebago,* 489 U.S. 189, 201 (1989); *Kennedy v. City of Ridgefield,* 3 F.3d 1055, 1062 (9th Cir. 2006); *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082 (9th Cir. 2000); *Wang v. Reno,* 81 F.3d 808, 812 (9th Cir. 1996); *L.W. Grubbs,* 974 F.2d 119 (9th Cir. 1992); *Wood v. Ostrander,* 879 F.2d 283, 589-90 (9th Cir. 1989). Failure to protect an individual from a state-created danger obligates the state to ensure that person's safety. *DeShaney,* 489 U.S. at 197, 201. The government has a constitutional duty to protect an individual in the immigration context as well if 1) there exists a "special relationship" between the Petitioner and the U.S. government; or 2) when the government placed the person in danger. *Wang,* 81 F. 3d at 818.

3. Because Petitioner asserts that the federal government has detained her in violation of statutory and constitutional law, the district court has jurisdiction to hear her challenge to the federal habeas corpus statute, the Suspension Clause, and the "state-created" danger exception. *See* 28 U.S.C. § 2241(c)(1); 28 U.S.C. § 2241 (c)(3); U.S. Const. Art. I, cl. 9; *INS v. St. Cyr,* 533 U.S. 289, 304 (2001); *Wang,* 81 F.3d 808.

4. Ms. Biocini asserts that the Northern District has jurisdiction to hear her challenge under the federal habeas corpus statute and the Suspension Clause because the federal government has detained her in violation of federal statutory and constitutional law. *See* U.S.

Const. Art. I, cl. 9; 28 U.S.C. 2241(c)(1); 28 U.S.C. 2241 (c)(3); *INS v. St. Cyr*, 533 U.S. 289, 304 (2001).

### VENUE

5. Venue is proper in the Northern District because a substantial part of the events giving rise to the claim occurred in this District and most of the Respondents reside and work in their official capacity in this District. 28 U.S.C. 1391(e). Salient events, such as Petitioner's arrest, plea bargain agreement proceedings, immigration and sentence hearings all took place in the Northern District. Additionally, counsel appears for court hearings in San Francisco and all relevant witnesses and parties are in the Northern District.

6. Venue is additionally proper in this Court pursuant to the Supreme Court's decision in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 493- 94 (1973) (noting that "traditional venue considerations" for the purposes of a habeas petition under 28 U.S.C. § 2241 include (1) location where material events took place, where records and pertinent witnesses are likely to be found; (2) the convenience of the forum for respondent and petitioner; and (3) the familiarity of the court with applicable laws.)

7. Petitioner is challenging more than her present physical confinement; she is also bringing a constitutional due process "state-created danger" claim. Therefore, the "district of confinement" rule set forth in *Padilla* is not sufficient for this motion, which goes beyond a core habeas petition; thus traditional venue considerations are applicable. *US v. Padilla,* 542 U.S. 426 (2004); *Navarro v. Gonzales,* 2006 WL 954191 (N.D. Cal.) (2006).

### INTRODUCTION

8. Petitioner, Ana Biocini, by and through her undersigned counsel, hereby petitions this Court for a writ of habeas corpus to review the lawfulness of her detention by Immigration and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security. She furthermore requests that the Court review the lawfulness of her removability based on the "state-created danger" exception set forth in *DeShaney v. Winnebago. DeShaney,* 489 U.S. 189, 201 (1989).

9. Petitioner is a non-citizen in removal proceedings and has been detained for almost two years even though there is little likelihood that her removal will occur in the

*Complaint and Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief*
3

reasonably foreseeable future. Controlling precedents at issue have established that the government is only authorized to detain non-citizens in removal proceedings for a reasonable period of time, deemed to be six months, for the purpose of effecting removal. Congress has authorized prolonged detention only in rare instances where national security concerns exist. *See Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006); *Clark v. Martinez,* 543 U.S. 371, 379 n.4 (2005); *Zadvydas v. Davis,* 533 U.S. 678, 692 (2001). The government's current detention policy, with respect to non-citizens in removal proceedings, violates federal immigration laws because no limits are placed on detention periods. Even if prolonged and indefinite detention were codified under immigration law, it would violate the Fifth Amendment's Due Process Clause. According to the Supreme Court, an alien is a "person" regardless of his status under immigration law, guaranteed due process of the law by the Fifth and Fourteenth amendments. *Plyler v. Doe,* 457 U.S. 202, 210 (1982). Petitioner has not been provided with a hearing to determine whether her prolonged detention is justifiable.

  10.  Petitioner further contends that the government has a duty to protect her and refrain from removing her to Colombia under the "state-created danger exception." *DeShaney,* 489 U.S. at 201 (state actions that create dangers or place private citizens in a more vulnerable position resulting in potentially greater harm, could amount to a constitutional violation). By making Petitioner a U.S. informant, the U.S. government created a "special relationship" with her, and, therefore, assumed responsibility for her safety and well-being. *DeShaney,* 498 U.S. at 200. The Ninth Circuit similarly found that the government had such a duty with respect to a non-citizen who was brought to the U.S. to serve as a witness in an international drug conspiracy case. *Wang v. Reno,* 81 F.3d 808, 810 (9th Cir. 1996). The Court found that the U.S. government had a constitutional duty to protect an individual when 1) there exists a "special relationship" between the Petitioner and the U.S. government, or 2) when the government has placed that person in danger. *Id.* at 818; *see also L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir. 1992). Here, the government is violating Petitioner's Due Process Rights under the Fifth Amendment by taking affirmative steps to remove her to Colombia, where she is now more vulnerable, facing possible death, as a result of her cooperation with the Federal Bureau of Investigation ("FBI").

## PARTIES

**Petitioner**

11.     Petitioner, Ana Biocini, is a citizen of Colombia who arrived in Miami, Florida on February 11, 1981 as a non-immigrant visitor. She became a Lawful Temporary Resident and later, a Lawful Permanent Resident of the United States on May 1, 1989. Petitioner was arrested on May 5, 1995 and pleaded guilty to one count, U.S.C. § 846, Conspiracy to Distribute Cocaine, on June 6, 1998 in the Northern District of California. This was her first and only felony conviction. From May 24, 1995 to January 16, 2004, Petitioner was on supervised release and on January 16, 2004, she began her thirty-month long sentence at the Federal Correctional Institute in Dublin, California. After completing her sentence, ICE took Petitioner into custody on March 2, 2006. She was transferred to Yuba County Jail, pursuant to a contract ICE has with the facility. She was transferred to the Lerdo Pre-Trial Facility in Bakersfield, California, in June 2006, where she continues to be in immigration custody awaiting the outcome of her petition for review. She has been detained for almost two years without a hearing under the general immigration detention statutes. On April 19, 2007, Ms. Biocini filed a motion for bond redetermination with the Immigration Judge ("IJ"), contending that her continued detention under INA 236(c) would violate her constitutional right of due process. On April 25, 2007, the IJ denied Petitioner's motion, stating that an administrative court does not have the power to adjudicate her constitutional claims. On June 28, 2007, the Board of Immigration Appeals ("BIA") upheld the IJ's denial. Petitioner requested parole in November 2006, but was denied. On December 6, 2007, Petitioner received a letter from ICE indicating that her custody status had been reviewed and she will continue to be detained. Petitioner is not likely to be released in the reasonably foreseeable future.

**Respondents (Sued In Their Official Capacity)**

12.     Respondent, Michael Mukasey, the Attorney General of the United States, is sued in his official capacity to the extent that 8 U.S.C. § 1102 gives him authority to detain Petitioner. He is responsible for the administration of the U.S. Immigration and Customs

Enforcement and implementation and enforcement of immigration laws. In his official capacity, he is the ultimate legal custodian of Petitioner.

13. Respondent, Michael Chertoff, is the Secretary of the Department of Homeland Security. He is responsible for the administration and enforcement of the immigration laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. 296, 116 Stat. 2135 (Nov. 25, 2003). *Id.* Respondent has the authority over the detention and departure of aliens in the Petitioner's position. Given this authority, he is the legal custodian over Petitioner, and is empowered to carry out any administrative order of deportation entered against her.

14. Respondent, Nancy Alcantar, is the Field Office Director of the San Francisco Office of ICE, Detention and Removal Operations (DRO). In her official capacity, she is a legal custodian over Petitioner, charged with the responsibility of determining whether Petitioner will be detained in custody of ICE or released pending the conclusion of judicial proceedings. Ms. Alcantar signed Petititoner's "Decision to Continue Detention" and has the authority to release her.

15. Respondent, Donny Youngblood, is being sued in his capacity as the Sheriff of Kern County Sheriff's Department and Lerdo Pre-Trial Detention Facility. He is the chief law enforcement officer in the county, responsible for providing prisoner transportation service to the courts. Respondent is the local Kern County official with immediate custody over Petitioner.

## EXHAUSTION

16. This habeas petition is proper before the Court because it raises constitutional challenges to 8 U.S.C. § 1226(c) and a constitutional due process challenge.

17. Petitioner has exhausted her administrative remedies to the extent required by the law. Petitioner has requested parole out of custody and been denied twice. Finally, Petitioner requested a bond hearing. On April 25, 2007, the IJ denied Petitioner's motion, stating that an administrative court does not have the power to adjudicate her constitutional claims. On June 28, 2007, the Board of Immigration Appeals ("BIA") upheld the IJ's denial. Petitioner has no further administrative remedies to pursue and has, therefore, satisfied the exhaustion requirements mandated by law.

**LEGAL FRAMEWORK**

18.     The general immigration detention statutes authorize the detention of non-citizens in removal proceedings under particular circumstances. *See* 8 U.S.C. §1225 (authorizing detention of aliens seeking admission);  8 U.S.C. §1226 (authorizing detention of aliens admitted to the United States);  8 U.S.C. § 1231 (authorizing detention of aliens with a final removal order).  The Supreme Court and the Ninth Circuit have both adopted narrow interpretations of these statutes, however, reading them to permit detention for only reasonable periods of time in order to effectuate removal proceedings.  A limit of a reasonable period of time was imposed due to the serious constitutional problems associated with prolonged detention outside of the criminal context.  *See generally Zavydas v. Davis,* 533 U.S. 678, 692 (2001) (prolonged and potentially indefinite of an alien who has been ordered removed is not authorized by statute;  there is a six month presumption of reasonableness before vital liberty interests are at stake. *Demore v. Kim*, 538 U.S. 510, 529 (2003));  *Demore,* 538 U.S. at 513 (mandatory detention authorized for the "brief" period necessary to complete removal proceedings);  *Nadarajah v. Gonzales,* 443 F.3d 1069, 1078 (9th Cir. 2006) (indefinite incarceration pending completion of removal proceedings not authorized under general detention statutes);  *Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005) (expedited removal of criminal aliens is required;  if detention is not expeditious, then the federal district court should grant petitioners' writs of habeas corpus, unless the government can provide a bond hearing within sixty days).

19.     Petitioner's primary legal claim is simple:  Although Congress has authorized the government to detain immigrants under §1236 (c) for a brief period necessary for removal proceedings, when the detention is indefinite and exceeds the presumptively reasonable six month period and the likelihood of removal is not reasonably foreseeable, the detention is not constitutionally permissible. *Demore*, 538 U.S. at 529;  *Nadarajah,* 443 F.3d at 1078; *Tijani*, 430 F.3d at 1242; *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2004).  Therefore, Petitioner asks this Court to grant a writ of habeas corpus.  She requests that this Court order her immediate release under reasonable conditions of supervision or hold a bond hearing to determine whether continued detention is justified. *Tijani*, F.3d at 1242 (holding that if detention is not expeditious,

*Complaint and Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief*
7

then the federal district court should grant petitioners' writs of habeas corpus, unless the government can provide a bond hearing within sixty days.).

20.     Petitioner's other legal claim addresses the constitutionality of her potential removal to Colombia.  The Supreme Court has acknowledged that state actions that create dangers or place private citizens in a more vulnerable position that could result in potentially greater harm might be unconstitutional. *DeShaney,* 489 U.S. at 201.  Failure to protect an individual from a state-created danger is a Due Process violation and obligates the state to ensure that person's safety. *Id.* at 197, 201 (cited in *Wood v. Ostrander,* 879 F.2d 583, 589- 90 (9th Cir. 1989).  The Ninth Circuit has adhered to state-created danger jurisprudence.   If a state actor places an individual in a position more dangerous than it initially found her, the state is liable. *Kennedy v. City of Ridgefield,* 3 F.3d 1055, 1063 (9th Cir. 2006).  In the immigration context, the Ninth Circuit found that the government assumed a constitutional duty to protect an immigrant and not remove him to his native country where he would face irreparable harm and possible death once the U.S. government established a special relationship with him and attempted to place him in danger by removing him to China. *Wang,* 81 F.3d at 818.  Therefore, Petitioner asks the Court to grant her a permanent injunction on her removability because Respondents have created a special relationship with her and now affirmatively seek to place her in a more dangerous position than it found her.

## STATEMENT OF FACTS

21.     Petitioner is a citizen of Colombia who arrived in Miami, Florida on February 11, 1981 as a non-immigrant visitor.  She became a Lawful Temporary Resident on May 23, 1987 and a Lawful Permanent Resident on May 1, 1989.

22.     On May 5, 1995, Petitioner was arrested for drug charges and pleaded guilty to U.S.C. § 846, Conspiracy to Distribute Cocaine, on June 6, 1998. Petitioner accepted a plea agreement to debrief FBI agents about Colombian cocaine suppliers at this time.  Petitioner agreed to cooperate truthfully and completely with the government, to testify anywhere and any place they might require.  Petitioner understood she would be issued a special visa to keep her and her family in the U.S., but this agreement was not mentioned in the plea agreement and the government later failed to issue one.  However, a motion for a USSG § 5K departure was issued

as a governmental discretionary reduction in sentence. The government did issue the departure at Petitioner's sentencing hearing, but denied several requests for an "S" visa in order to keep her family safe in the U.S.

23. Petitioner provided substantial assistance and information to the U.S. government about Colombian narco-trafficking. For a period of three years, she reviewed recorded telephone conversation, debriefed the government, and willingly agreed to participate in a negotiated deal with a local drug dealer, and testify in court against Noberto Duarte, a well-known Cuban drug trafficker. The government conceded that Petitioner's willingness to testify was instrumental in Mr. Duarte's decision to accept a plea agreement.

24. Petitioner also provided the FBI with extensive information about three powerful drug cartel members: Elias Giannakapolous ("the Greek"), a major cocaine vendor living in Miami; Felix Bernal Fernandez ("Bernal"), a drug trafficker operating in the San Francisco area since the 1990's; and Hernando Velazco ("Gordo"), a well-known drug trafficker from Calí, Colombia. Gordo was assassinated after his arrest and removal to Colombia. Petitioner believes he was killed due to his role as a U.S. informant. She fears that knowledge of her role as an informant has reached Colombian drug cartel members, placing her in similar danger. Petitioner fears she will face the same fate as Gordo if she is removed to Colombia.

25. Additionally, Petitioner provided information about political officials with ties to the founders of the Calí drug cartel, as well as other cocaine suppliers with links to the Medellín and Calí cartels. She also supplied the FBI with the names, numbers and addresses of over forty individuals connected to the Colombian narco-trafficking industry. At Petitioner's sentencing hearing, FBI agent, Jeffrey Iverson, stated that the FBI held the belief that Petitioner had "the highest and most direct access to the . . . original sources in Colombia."

26. Not only the government, but the Criminal Judge, Judge Breyer, found that Petitioner provided substantial assistance to the government at her sentencing hearing. The information Petitioner supplied related to "some people that are very high up and are very potentially dangerous." The judge found that Petitioner and her family were in danger as a result of her cooperation with the government and recommended that Petitioner not be removed after

completing her sentence. In fact, he thought it inconceivable that Respondents would even consider removing her.

27. Petitioner has one son, Peter Biocini, who has experienced psychological difficulties since witnessing his mother's arrest many years ago. He started to have problems at school and suffer from depression after the arrest. Years later, he was diagnosed as suffering from mental illness. His mother's arrest was seen as the root cause for his disorder, according to his treating physician at Kaiser. While Peter received treatment and initially showed signs of improvement, his condition worsened immediately before Petitioner self-surrendered. The sentencing judge allowed Petitioner to postpone her surrender date several times to help Peter adjust to her absence.

28. Colombia, Petitioner's country of birth, remains permeated by governmental corruption inextricably interwoven with drug cartels and terrorist organizations. It is commonly referred to as a "narco-democracy" and produces ninety percent of the world's cocaine and seventy percent of its heroin. Violence and corruption dominate in an effort by terrorist and paramilitary groups to gain control over key coca cultivation areas. Drug mafia bosses have become increasingly more involved with paramilitaries, blurring the lines between the roles of Colombian drug bosses and paramilitary commanders. Petitioner cannot expect to be safe if she returns to this environment after having provided substantial assistance and information about key drug players in Colombia to the U.S. government.

29. Petitioner has been subject to mandatory detention by ICE since March 2, 2006, pursuant to 8 U.S.C. § 1226(c). She has been detained for almost two years while challenging her removal from the United States. Petitioner filed a Petition for Review in Ninth Circuit Court of Appeals, challenging the BIA's dismissal of her appeal of her order of removal. The parties filed a joint motion to remand the matter to the BIA, which was granted by the Ninth Circuit Court of Appeals on January 29, 2008. Based on the agreement of the parties, Petitioner's removal is stayed pending a Board decision in this matter.

30.     Petitioner poses no danger to the community or flight risk. She was on supervised release for eight and a half years without using or dealing drugs. In light of the fact that her family is here in the United States and she has been in this country for over twenty-five years, Petitioner poses no flight risk. Her sentencing judge furthermore found that Petitioner was not a flight risk and no longer posed a danger to the community after "staying clean" for eight years.

## **ALLEGATIONS**

31.     The government has a practice of detaining non-citizens under general detention statutes for unreasonably prolonged and indefinite periods of time pending completion of their removal proceedings. Specifically, the government incarcerates non-citizens for well beyond the six month period found to be presumptively reasonable for completing removal proceedings, without taking into account whether their release will be likely in the reasonably foreseeable future. Petitioner brings this action because 1) she has been detained for longer than six months pursuant to the general immigration detention statute pending completion of removal proceedings, and 2) her prolonged detention is not justified because her removal is not significantly likely in the foreseeable future.

32.     Petitioner's removal is not significantly likely in the near future because her case has just been remanded from Ninth Circuit Court of Appeals to the BIA, such that the date of any final resolution of her removal is indefinite.

33.     Furthermore, there is no reasonable likelihood that the government will eventually effect Petitioner's removal because she has raised a substantial argument against removability. Petitioner asserts that her removal to Colombia would violate her substantive due process rights based on a theory of "state created danger." Petitioner has shown that 1) there exists a special relationship between her and the U.S. government as a result of her status as an informant; and 2) the government has placed Petitioner in a position of danger by benefiting from her assistance and information and consequently, taking affirmative steps to remove her to Colombia where she could be executed as a result of her cooperation with the U.S. government. The Ninth Circuit has found that the U.S. government has a constitutional duty to protect individuals with whom it had a special relationship or placed in a more dangerous position than it found the individual. *Wang,* 81 F. 3d at 818; *see also L.W. Grubbs,* 974 F.2d 119, 121 (9th Cir. 1992).

*Complaint and Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief*
11

# FIRST COUNT

**Petitioner Has Been Detained For An Unreasonable Length Of Time In Violation Of Due Process**

34. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

35. Respondents' continued detention of Petitioner without a hearing to determine whether her prolonged non-criminal detention is justified violates Petitioner's right to be free of prolonged non-criminal detention without adequate justification and sufficient procedural safeguards, as guaranteed by the Fifth Amendment of the United States Constitution.

# SECOND COUNT

**The Government Has Violated The Immigration And Nationality Act And Regulations**

36. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

37. Respondents' continued detention of Petitioner under the general immigration detention statutes violates the Immigration and Nationality Act. Detention is not authorized beyond the presumptively reasonable six-month period deemed necessary to complete removal proceedings if the likelihood of removal in the reasonable future seems remote.

# THIRD COUNT

**Petitioner Has Been Denied Due Process Rights Under The "State-Created Danger" Exception**

38. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

39. Respondents' initiation of removal proceedings against Petitioner after creating a special relationship with her and affirmatively placing her in a more dangerous situation than it found her in violates her liberty interest in personal security and thus her Due Process rights under the Fifth Amendment.

# FOURTH COUNT

**Petitioner's Prolonged Detention Does Not Bear Reasonable Relation To Her Removal**

40.     Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

41.     Respondents' detention of Petitioner bears no reasonable relation to her removal since Respondents are no longer likely to remove her under the "state-created danger" exception and are substantially unlikely to establish charges to effectuate removal.  Furthermore, Respondents are partly responsible for the length of Petitioner's removal proceedings, making detention unwarranted.

## FIFTH COUNT

### Petitioner Has Been Denied Due Process In That ICE Transferred Her Far From Her Attorneys And The Courts In Violation Of ICE Guidelines

42.     Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

43.     Respondents directly violated section III(A)(1) of the *ICE Detention Standards,* which requires ICE to consider "whether the attorney of record is within reasonable driving distance of the detention facility and where immigration court proceedings are taking place." The attorney of record is located in Davis, California, a four to five-hour drive (approximately three hundred miles) from Bakersfield.  Furthermore, the Bakersfield Lerdo Detention Center is a contract facility of ICE.  The center has its own rules forbidding student advocates from interviewing detainees.

## SIXTH COUNT

### The Government Has Violated International Law

44.     Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

45.     Respondents' prolonged detention of Petitioner violates her rights to be free from arbitrary detention under Article 9, Section 1 of the International Covenant on Civil and Political Rights ("ICCPR"), which was signed on December 16, 1966, 999 U.N.T.S. 171, and entered into force on March 23, 1976, as interpreted through Article 2, Section 1 of the ICCPR.  These sections of international law have been adopted and incorporated into domestic law and bind Respondents.

# **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody;

3) Pending final resolution of this habeas petition, release Petitioner pursuant to the Court's equitable powers;

4) Declare Respondents' continued detention of Petitioner to be arbitrary and capricious, in violation of the Immigration and Nationality Act and implementing regulations, and in violation of Petitioner's substantive and procedural due process rights under the Due Process Clause of the Fifth Amendment, in violation of Article 9, Section 1 of the International Covenant on Civil and Political Rights, and in violation of Articles 26 and 31 of the Convention Relating to the Status of Refugees;

5) Issue a Permanent Injunction enjoining Petitioner's removal to Colombia;

6) Alternatively, transfer petitioner to Yuba County Jail, in Marysville, California to ensure adequate attorney access.

7) In the event that any of the above relief is not granted, permit law students to have access to Petitioner in detention in Lerdo Pretrial Facility.

8) Grant Petitioner reasonable attorneys' fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412; and

9) Grant any other and further relief that this Court may deem fit and proper.

Dated:                                              Respectfully submitted,



                                                    By: _____
                                                        Holly Cooper
                                                        Attorney for Petitioner

*Complaint and Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief*
14

## VERIFICATION

I, Ana Biocini, currently detained at the Lerdo County Pre-Trial Facility in Bakersfield, California, hereby declare under penalty of perjury of the laws of the State of California and the United States that the facts alleged in the foregoing Verified Petition for Writ of Habeas Corpus are, to the best of my knowledge, true and correct.

Executed this 30 day of JANUARY, 2008 in Bakersfield, California.

_____
Ana Biocini

# **STATEMENT OF RELATED CASES AND PROCEEDINGS**

TO THE HONORABLE COURT OF APPEALS:

Petitioner submits this statement of pendency of related proceedings.

Petitioner's Petition for Review is relevant to the instant Petition for Writ of Habeas Corpus and Declaratory and Injunctive Relief. In *Biocini v. Mukasey,* Ninth Circuit Court of Appeals docket # 06-74408, Petitioner requested the Ninth Circuit Court review the Board of Immigration Appeals' ("BIA") order denying her application for withholding of removal and relief under the Convention Against Torture. Recently, the Ninth Circuit Court of Appeals remanded the case to the BIA. Petitioner submits this case raises closely related issues to the present Petition for Writ of Habeas Corpus and Declaratory and Injunctive Relief because Petitioner alleges that her eligibility for withholding of removal and relief under the Convention Against Torture impact her detention status and the injunctive relief sought.

Petititoner's prior criminal proceedings are also relevant to the instant Petition for Writ of Habeas Corpus and Declaratory and Injunctive Relief. In *USA v. Biocini*, *et. al.*, 3:95 – CR-00187-CRB, Petitioner was prosecuted for Conspiracy to Distribute Cocaine pursuant to 21 U.S.C. §846. Petitioner submits this case relates to the current Petition for Writ of Habeas Corpus because at issue is whether Petitioner developed a special relationship with the U.S. Government when she served as a U.S. drug informant during her criminal proceedings. Judge Breyer found in the prior criminal proceedings that Petitioner had provided substantial assistance to the federal government as an informant in the aforementioned criminal matter.

Dated: February __, 2008        _____
                                Holly S. Cooper
                                Attorney for Petitioner, Ana Biocini