

# EXHIBIT
# G-4



## SAN MATEO COUNTY OFFICE OF EDUCATION
### REGIONAL OCCUPATIONAL PROGRAM

# CERTIFICATE OF COMPLETION

*Ana Biocini*

Has successfully completed the course of instruction as approved by the State of California in

*Computerized Accounting*

and has demonstrated competence in this field.  This Certificate of Completion is hereby awarded as a testimony to the student's skills and abilities.

County Superintendent of Schools

Floyd Gonella, Ed.D.

ROP Administrator

Diane Centoni

Date

June 10, 1997

ROP Instructor

Barbara Kilpatrick



*California State Assembly*

*Certificate of Recognition*

PRESENTED TO:

# Ana Biocini

IN HONOR OF:

graduating from the
Parent Institute for Quality Education

March 20, 2002



S. Joseph Simitian

MEMBER OF THE ASSEMBLY

21st ASSEMBLY DISTRICT

CALIFORNIA STATE LEGISLATURE

000894



# Parent Institute for Quality Education

Certifica que

## Ana Biocini

Completó el curso de preparación para padres de familia ofrecido en

## Kennedy Middle School

Dirigido a promover una excelente educación para nuestros niños

Redwood City, California

20 de Marzo del 2002

Alfredo Castañeda
Director Ejecutivo

Warren Sedar
Director

PARENT
INSTITUTE
FOR QUALITY
EDUCATION

000895

# Commendation

HONORING AND COMMEMORATING THE PARTICIPATION OF:

## *Ana Biocini*

TO HONOR AND COMMEMORATE YOUR PARTICIPATION IN THE PARENT INSTITUTE FOR QUALITY EDUCATION, AND IN ANTICIPATION OF THE GREAT BENEFITS YOUR CHILD WILL RECEIVE FROM HAVING COMPLETED THIS PROGARM, I EXTEND MY HEARTFELT CONGRATULATIONS AND MY BEST WISHES FOR YOUR BRIGHT FUTURE.

Dated:  March 15, 2002

ROSE JACORS GIBSON
San Mateo County Supervisor

000896

# CERTIFICATE OF COMPLETION

*Awarded to*

*Ana Biocini*

*For the Successful Completion of*

## Integrated Circuit Mask Design Course

Presented by

**Silicon Artists**
3755 El Camino Real, Suite 200
Santa Clara, California
**September 21, 2002**

Director



# Certificate of Completion

Presented to

## Ana Biccini

For Successfully completing
The ACE Course:

## Pre-Employment Competencies

Mrs. L. Bean, ACE Coordinator

Mr. D. Wilcox, SOE

Date



# Certificate of Completion

Presented to

## Ana Biocini

For Successfully completing
the ACE Course:

## Job and Life Skills

4-23-04
Date

Mr. D. Wilcox, SGT

Mrs. L. Evan, ACE Coordinator

# SISTERS IN RECOVERY

## Ana

for her commitment to her Wellness routine

10/3/04
Date

_M. Marvin_
Signed

# Certificate of Achievement

awarded to:

## Ana Biocini

for completion of the 500 Hour Residential Drug Abuse Program
at FCI-Dublin on December 10, 2004

Heather Martin, B.A., DTS

Sue Feder, Psy.D., DAPC

12152004DB5

EXHIBIT #2

Version . . English 2002

# State of California

# High School Equivalency Certificate

This is to certify that

*ANA B. BIOCINI*

has met the standards established by the California State Board of Education for successful completion of the tests of General Educational Development and is therefore entitled to this High School Equivalency Certificate.



15-Dec-2004

_Jack O'Connell_
State Superintendent of Public Instruction

_Ruth E. Green_
President of the
California State Board of Education

This Certificate is printed on secure paper that has a large California State Seal watermark and a gold foil seal in the lower left corner

# Certificate of Completion

Awarded to

## Ana Biocini

Congratulations on Completing
The Stress Management Group

_Ms. Hoekstra_
Ms. Hoekstra

1/10/05
January 10th, 2005

000903



# Certificate of Completion

Ana Biocini

for

Microsoft Office XP 2002

June 20, 2005

Douglas Wilcox
Education Supervisor

Cory Williams
Vocational Instructor

000904



# Certificate of Completion

*Ana Biocini*

for

*Microsoft Power Point 2002*

*June 20, 2005*

Douglas Wilcox
*Education Supervisor*

Cory Williams
*Vocational Instructor*

000905



# Certificate of Completion

*Ana Biocini*

*for*
*Microsoft Word 2002*
*June 20, 2005*

Douglas Wilcox
Education Supervisor

Cory Williams
Vocational Instructor



# Certificate of Completion

## Ana Biocini

for
Microsoft Excel 2002
June 20, 2005

Cory Williams
Vocational Instructor

Douglas Wilcox
Education Supervisor

000907

# Certificate Of Completion

awarded to :

## Ana B. Biccini

for completing

## Adobe Photoshop 7.0

Dublin, CA

Date 10/12/05

Mr.D. Nyswonger
V.T.Business Instructor

000908



# EXHIBIT
## G-5

000909



| EMPLOYMENT HISTORY SINCE JULY OF 1995 | | |
|---|---|---|
| **Dates** | **Name and Address of Employer** | **Job, Monthly wage, Reason for Leaving** |
| From: 7/15/1995 To: 4/15/1996 | Kohl Weiss Import Auto Parts 2001 Spring Street Redwood City   CA 94063 | Sales and delivery Dpt 5.25 Hour. + Commission |
| From: 7/11/1997 To: 8/6/1997 | Accountants on Call 525 University Avenue St 23 Palo Alto CA 94301 | Accounting Clerk 11.50 Hour Assignment end |
| From: 9/06/1997 To: 9/12/1997 | Career Resources 805 El Camino Real Menlo Park CA 94025 | Accounting Clerk 11.00 Hour Assignment ends |
| From: 9/19/1997 To: 10/24/1997 | Accountemps/San Mateo County Environment Dpt Redwood City | Accounts Payable 12.00 Hour Assignment ends |
| From: 11/07/1997 To: 1/16/1998 | Accountemps / Corsair Co Palo Alto Silicon Valley | Accounts Payable 12.00 Hour Temporary Assignment |
| From: 8/14/1998 To: 12/16/1998 | Accountants on Call 525 University Avenue St 23 Palo Alto CA  94301 | Accounts Payable 16.00 Hour Temporary Assignment |
| From: 1/9/1999 To: 1/22/1999 | Carnaghe and Gibbs Business Silicon Valley | Accounts Payable 16.00 Hour Temporary Assignment |

000910



| Dates | Name and Address of Employer | Job, Monthly wage, Reason for Leaving |
|---|---|---|
| From:<br>2/03/1999<br>To:<br>6/16/1999 | Accountants on Call<br>525 University Avenue St 23<br>Palo Alto CA 94301 | Accounts Payable<br>16.00 Hour<br>Temporary Assignment |
| From:<br>7/17/1999<br>To:<br>8/13/1999 | Management Solutions<br>99 Almaden Blvd, Suite 600<br>San Jose CA 95113 | Accounts Payable<br>17.00 Hour<br>Temporary Assignment |
| From:<br>9/1/1999<br>To:<br>9/22/1999 | Accountants on Call<br>525 University Avenue St 23<br>Palo Alto CA 94301 | Accounts Payable<br>16.00 Hour<br>Temporary Assignment |
| From:<br>9/25/1999<br>To:<br>12/03/1999 | Romac International INC<br>Silicon Valley CA | Accounts Payable<br>17.00 Hour<br>Temporary Assignment |
| From:<br>12/17/1999<br>To:<br>12/31/1999 | Accountemps/ Neale May &<br>Partners (Publicity Agency)<br>Palo Alto – Silicon Valley | Accounts Payable<br>17.00 Hour<br>Temporary Assignment |
| From:<br>1/7/2000<br>To<br>2/11/2000: | Accountemps/ Kaspick and CO<br>(Stock & Investment CO)<br>Menlo Park - Silicon Valley | Accounts Payable<br>18.00 Hour<br>Temporary Assignment |
| From:<br>2/18/2000<br>To:<br>3/10/2000 | Conscium<br>(Manufacture Hardware devices)<br>Mountain View – Silicon Valley | Accounts Payable<br>18.00 Hour<br>Temporary Assignment |
| From:<br>3/17/2000<br>To:<br>6/9/2000 | Eder Marketing Group<br>(Logo Fabrics Industry)<br>Mountain View – Silicon Valley | Accounts Payable<br>19.50 Hour<br>Temporary Assignment |

| Dates | Name and Address of Employer | Job, Monthly wage, Reason for Leaving |
|---|---|---|
| From: 6/16/2000 To: 8/4/2000 | Eriksson WebCom (Software Enterprise CO) Menlo Park – Silicon Valley | Accounts Payable 22.00 Hour Temporary Assignment |
| From: 8/11/2000 To: 1/26/2001 | Pacific Gateway Exchange (Telecommunications & Internet SVCS CO) Burlingame – Silicon Valley | Accounts Payable 22.00 Hour Temporary Assignment |
| From: 2/02/2001 To: 3/30/2001 | Accountemps/ MICROCHIPS (Manufacture semiconductor devices, CHIPS) Mountain View- Silicon Valley | Accounts Payable 24.00 Hour Temporary Assignment |
| From: 4/20/2001 To: 10/04/2001 | SAP Markets Enterprise Software Hardware, Operating Systems Palo Alto- Silicon Valley | Accounts Payable 24.00 Hour Temporary Assignment |
| From: 9/02/2003 To: Current | Pacific Graduate School of Psychology Palo Alto  -Silicon Valley | Accounts Payable |
| From: To: | | |
| From: To: | | |
| From: To: | | |

# AR <u>913-19</u> have been deleted.

For AR <u>913-14</u> see AR 335-36
For AR <u>915-19</u> see AR 354-58 (in reverse chronological order)





## LAW OFFICE OF
# ROBERT
# WAGGENER

214 Duboce Avenue, San Francisco, CA 94103-1099    (415) 431-4500    FAX (415) 255-8631    rwlaw@mindswpring.com

June 25, 2003

The Honorable Charles R. Breyer
United States District Court Judge
United States District Court
450 Golden Gate Avenue - 16th Floor
San Francisco, CA 94102

> Re:    **U.S. v. Biocini**
>        **Case No. CR95 00187 CRB**

Dear Judge Breyer:

The court has sentenced defendant Ana Biocini to a 30-month sentence in the custody of the Attorney General with a surrender date of July 14, 2003. This letter is to request an extension of the scheduled surrender date to September 25, 2003. The bases for the requested new surrender date is set out below and several exhibits are attached hereto which substantiate the factual basis for the requested new date. This letter and its attachments are being forwarded to Assistant United States Attorney Barbara Silano and probation officer Tess Lopez in the hope that they will agree to such an extension.

The most immediate and critical basis for setting a new date for Ms. Biocini's surrender is the condition of her son, 14-year old Peter Biocini. The court will recall the material submitted at the sentencing of Ms. Biocini which detailed the depression of her son and his frequent suicidal ideation. Attached hereto as Exhibit A is a letter from Dr. Chase Spangler regarding his diagnosis and care and treatment of Peter Biocini. I placed a call to Dr. Spangler last week for clarification regarding the substance of his letter. In a telephone message left last Friday, Dr. Spangler informed me that the impending surrender of his mother has been profoundly disturbing to Peter and threatens the structure of his life as it has been up to this point. In the doctor's opinion, It would greatly benefit Peter's adjustment and mental health if the sentencing date could be moved closer to the start of the school year. According to Dr. Spangler, for children or adults experiencing depression, a more structured life, with an increase in activities and people contact generally helps them to better cope. Peter has intermittent passive suicidal ideation and is a part of the weekly depression and anger management group at Kaiser. There has been an increase in Peter's passive suicidal fog, *e.g.*, thoughts of wanting to harm or hurt self but taking

C:\Data\RW\Breyer2 Ltr.ab.wpd

000921

The Honorable Charles R. Breyer
June 25, 2003
Page 2

no action to do so, and increased feelings of hopelessness, with no improvement in sight. Thus, for the reasons noted by Dr. Spangler, it is requested that Ms. Biocini's surrender be pushed back at least until Peter Biocini is enrolled in school.

At the sentencing of this matter, the court expressed its concern regarding Ms. Biocini's custodial plans for Peter during the time that she is incarcerated. It should first be noted that Peter Biocini's father, George Biocini, is not a viable custodial option for their son. Attached hereto as Exhibit B, is a collection of court orders and documentation as to the on-going family law disputes between Ana Biocini and George Biocini. In summary, George Biocini has failed to comply with court orders regarding production of documents and payment of child support and contempt proceedings have been initiated against Mr. Biocini with a future court date of August 7, 2003.

The custodial plan for Peter Biocini at this point is that he stay with his uncle, Pete Biocini. Attached hereto as Exhibit C is a letter from Mr. Biocini noting his willingness to take Peter into his home and to supervise him, and care for him while Ms. Biocini is unavailable. Presently, Ms. Biocini continues to live with her son in Mountain View, California, and the plan would be for Peter Biocini to, in the future, reside with his uncle in Santa Clara, California. An issue regarding Mr. Biocini's care for Peter is the limited room in his house. One of Mr. Biocini's children is scheduled to move out of the house on September 25th of this year and that room would then become available for Peter to live in. The plan is that Peter could enroll in the high school in Santa Clara (Santa Clara High School) and stay with his mother nearby and then actually move into the Peter Biocini residence on the September 25 date or maybe a bit earlier. Obviously, the aim is to be consistent with Dr. Spangler's advice and establish some structure and consistency in Peter's life so that he has a stable platform to deal with these difficult issues. The first day of school for Santa Clara High School is September 2nd.

Another basis for the surrender date extension is to give Ms. Biocini a bit more time to resolve her potential immigration/deportation problems. The court has recommended that Ms. Biocini participate in the Intensive Confinement Center program through the Bureau of Prisons (Boot Camp). The court will recall, however, that Ms. Biocini is a resident-alien and not a U.S. citizen and this potentially complicates her participation in the Boot Camp program. See Exhibit D attached (portion of Bureau of Prisons Intensive Confinement Center Program statement.) Conversations with probation officer Tess Lopez regarding her investigation and discussion with the Bureau of Prisons personnel are to the effect that a looming possibility of deportation could potentially disqualify Ms. Biocini from participation in the Boot Camp program. There is no question Ms. Biocini has been convicted of a deportable offense. The government is unwilling to grant Ms. Biocini what is called an "S-Visa" but they are willing to support an asylum claim by



C:\Data\RW\Breyer2 Ltr.ab.wpd



The Honorable Charles R. Breyer
June 25, 2003
Page 3

Ms. Biocini as to the potentially foreboding consequences of a return to Colombia. The new policy of the Bureau of Prisons is that any one with potential immigration issues will be dealt with in immigration court while they are in the custody of the Attorney General and only after a resolution of the immigration issue could a person potentially become eligible or be accepted into the Boot Camp program. The task, therefore, is to attempt to get Ms. Biocini's immigration issues addressed as quickly as possible so that she can get a resolution of her immigration issues prior to or shortly after her surrender date. Ms. Biocini and I have been actively discussing the situation with immigration lawyers and Ms. Biocini has several appointments with immigration attorneys to deal with this issue.

The bottom line is that Ms. Biocini is attempting to responsibly deal with a very difficult situation. Ms. Biocini is fully aware of her custodial obligations as a result of her conviction, however, circumstances are such that more time is needed before her surrender date, particularly in terms of the mental health and care and treatment of her son. As mentioned earlier, copies of this letter will be sent to Ms. Silano, Assistant United States Attorney and also to Tess Lopez, Deputy United States Probation Officer in the hope that there can be a willingness to stipulate to a modification of the surrender date. Should the court desire a hearing on the matter for further information or investigation, then Ms. Biocini and I are clearly willing to do whatever it takes to address any concerns for the court. As soon as I have heard from Ms. Silano regarding her position on the new surrender date, then I will notify the court. For the convenience of the court, a proposed order is attached extending the surrender date from July 14, 2003 to a future date.

Sincerely,

Robert Waggener

RW\kl

Enclosure(s)

cc:    Barbara Silano, AUSA
       Tess Lopez, Deputy U.S. Probation Officer

C:\Data\RW\Breyer2 Ltr.ab.wpd

***RESPONDENT'S SUBMISSION OF SUPPORTING DOCUMENTATION***
*Matter of Ana Biocini, A91-182-333*

**CERTIFICATE OF SERVICE**

On _____12/6/05_____, I served the following document(s):   ***RESPONDENT'S SUBMISSION OF SUPPORTING DOCUMENTATION*** upon the parties in said action by placing a true and correct copy in a sealed envelope and each envelope addressed as follows:

US-ICE Office of Chief Counsel
550Kearny Street, Ste. 1000
San Francisco, CA 94941

___   *By Facsimile Machine (Fax)* .  By personally transmitting a true and correct copy thereof via an electronic facsimile machine during regular business hours.

☑   *By Mail* .  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service and that this document, with postage fully prepaid, will be deposited with the United States Postal Service this date in the ordinary course of business.

___   *By Certified Mail.*  I am readily familiar with the business practice for collection and processing of correspondence for certified mailing with the United States Postal Service and that this document, with postage fully prepaid, will be deposited with the United States Postal Service on this date in the ordinary course of business.

___   *By Overnight/Express Mail.* I am familiar with the business practice for the collection and processing for Overnight/Express Mail with the United States Postal Service and/or Overnight service provider. Such correspondence will be deposited with a facility regularly maintained by the United States Postal Service for receipt of express mail or other overnight service providers/entities (i.e., Federal Express, United States Parcel Service, etc.) For receipt of Overnight Mail on the same day in the ordinary course of business.

___   *By Personal Service* .  By personally delivering a true copy thereof to the office of the addressee above.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on _____12/6/05_____, in Davis, CA.

Christopher J. Todd, Esq.

RECEIVED
DEPARTMENT OF JUSTICE
DEC 8 2005
EXECUTIVE OFFICE
IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO, CALIFORNIA

***RESPONDENT'S SUBMISSION OF SUPPORTING DOCUMENTATION***
*Biocini, A91-182-333*

PLF / ASM
I 10-17-05
LD

## UNIVERSITY OF CALIFORNIA, DAVIS

BERKELEY · DAVIS · IRVINE · LOS ANGELES · MERCED · RIVERSIDE · SAN DIEGO · SAN FRANCISCO          SANTA BARBARA · SANTA CRUZ

IMMIGRATION LAW CLINIC
SCHOOL OF LAW CLINICAL PROGRAMS
ONE SHIELDS AVENUE
DAVIS. CA 95616-6942
TELEPHONE: (530) 752-6942
FAX: (530) 752-0822
EMAIL: ImmCon@ucdavis.edu

October 6, 2005

Clerk to the Honorable Judge Murry
Office of the Immigration Judge
Executive Office of Immigration Review
550 Kearny Street, Suite 800
San Francisco, CA 94108

**RE: Ana Biocini**
**A# 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**

Dear Clerk,

Please find the enclosed **EOIR-28** in the above-mentioned case for filing. Your office received the Motion to Continue on October 5, 2005 for Ms. Ana Biocini.

Please contact me at the Immigration Law Clinic, (530) 752-6942, if you have any questions or concerns in this matter.

Sincerely,

Justine Tobin
Administrative Legal Assistant
Immigration Law Clinic
UC Davis School of Law

PLE/ASM

## NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
### BEFORE THE IMMIGRATION COURT
*EXECUTIVE OFFICE FOR IMMIGRATION REVIEW*

TYPE OF PROCEEDING:

[ ] Deportation  [ ] Bond Redetermination  [ ] Disciplinary
[X] Removal  [ ] Motion to Reopen/Reconsider
[ ] Exclusion  [ ] Rescission

DATE  9/25/05

ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)

A A091182333

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

| NAME | (First) | (Middle Initial) | (Last) |
|---|---|---|---|
| | Ana | B | Biocini |

| ADDRESS | (Number & Street) | (Apt. No.) | (City) | (State) | (Zip Code) |
|---|---|---|---|---|---|
| | Federal Correctional Institution, 5701 8th Street Camp Parks | | Dublin | CA | 94568 |

Please check one of the following:

[X] 1. I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia:

*Name(s) of Court(s)*          *State Bar No. (if applicable)*

New York                     N/A

OCT 7 2005

(Please use space on reverse side to list additional jurisdictions.)

I [X] am not (or [ ] am - explain fully on reverse side) subject to any order of any court or adminstrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

[ ] 2. I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization):

[ ] 3. I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Immigration Court. I declare under penalty of perjury under the laws of the. United States of America that the foregoing is true and correct.

SIGNATURE OF ATTORNEY OR REPRESENTATIVE      EOIR ID#       TELEPHONE number (Include Area Code)    DATE

(415) 846-9311       9/25/05

NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT)    ADDRESS    [ ] Check here if this is a new address.

Christopher Todd

UCDavis School of Law, Immigration Clinic
One Shield Avenue, TB-30
Davis, CA 95616-8821      (530) 752-6942

### Certificate of Service

I _____ (Name) _____ mailed or delivered a copy of the foregoing on 10/6/05 (Date) to the Immigration and Naturalization Service at  SSc Keorny SF CA (Address)

X _____
Signature of Attorney or Representative

OMB#1125-0006

FORM EOIR-28
August 99

**(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)**

000926

I HEREBY ACKNOWLEDGE THAT THE ABOVE-NAMED ATTORNEY OR REPRESENTATIVE REPRESENTS ME IN THESE PROCEEDINGS AND I CONSENT TO DISCLOSURE TO HIM/HER OF ANY RECORDS PERTAINING TO ME WHICH APPEAR IN ANY EOIR SYSTEM OF RECORDS.

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
|---|---|---|
| Ana B Biocini | *Ana B Biocini* | 10-5-2005 |

(NOTE: *The Privacy Act of 1974 requires that if the person being represented is or claims to be a citizen of the United States or an alien lawfully admitted for permanent residence, he/she must sign this form.*)

**APPEARANCES** - An appearance shall be filed on EOIR Form-28 by the attorney or representative appearing in each case before an Immigration Judge (see 8 C.F.R. § 3.17). When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature shall constitute a representation that, under the provisions of 8 C.F.R. Chapter 3, he/she is authorized and qualified to represent individuals. Thereafter, substitution or withdrawal may be permitted upon the approval of the Immigration Judge of a request by the attorney or representative of record. Please note that appearances for limited purposes are not permitted. A separate appearance (EOIR Form-27) must be filed with an appeal to the Board of Immigration Appeals (see 8 C.F.R. § 3.38(g)). Further proof of authority to act in a representative capacity may be required.

**AVAILABILITY OF RECORDS** - During the time a case is pending, a party to a proceeding or his/her attorney or representative shall be permitted to examine the Record of Proceeding in the Immigration Court having administrative control over the Record of Proceeding, in accordance with the standard procedures of that Court.

**REPRESENTATION** - A person entitled to representation may be represented by any of the following:

    (1) Attorneys in the United States as defined in 8 C.F.R. § 1.1(f).

    (2) Law students and law graduates not yet admitted to the bar as defined in 8 C.F.R. § 292.1(a)(2).

    (3) Reputable individuals as defined in 8 C.F.R. § 292.1(a)(3).

    (4) Accredited representatives as defined in 8 C.F.R. § 292.1(a)(4).

    (5) Accredited officials as defined in 8 C.F.R. § 292.1(a)(5).

**THIS FORM MAY NOT BE USED TO REQUEST RECORDS UNDER THE FREEDOM OF INFORMATION ACT OR THE PRIVACY ACT. THE MANNER OF REQUESTING SUCH RECORDS IS CONTAINED IN 28 C.F.R. §§ 16.1-16.11 AND APPENDICES.**

Public reporting burden for the collection of information is estimated to average 6 minutes per response, including the time for reviewing the data needed, completing and reviewing the collection of information, and record-keeping. Send comments regarding this burden estimate or any other aspect of this information collection including suggestions for reviewing this burden to the Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041.

Persons are not required to respond to this collection of information unless the form displays a currently valid OMB number.

    Additional Information:

(Please attach additional sheets of paper as necessary.)

* U.S. GPO: 2000-461-078/21606

 

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
550 KEARNY ST., SUITE 800
SAN FRANCISCO, CA 94108

DATE:  June 15, 2005

Chief Assistant District Counsel
U.S. IMMIGRATION & NATURALIZATION SERVICE
550 KEARNY ST., SUITE 1000
SAN FRANCISCO, CA 94108

**RE:**     Ana Beatriz BIOCINI
**FILE:**   **A91 182 333**

The Immigration Court received this motion/documents, with no indication that a copy was
served on your office.   Therefore, a copy is attached for your information.

If you have any questions please contact the Immigration Court.

Mei Young
Immigration Court Clerk

enclosures

*Denied as
moot
AJM
12/14/05*

ANA BEATRIZ BIOCINI # 93061-011
FEDERAL CORRECTIONAL INSTITUTION
5701 8th ST CAMP PARKS
DUBLIN, CA. 94568

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

05 JUN 15 PM 1:09

HONORABLE JUDGE:  MURRY                )
                                        )
                                        )
IN THE MATTER OF                        )
ANA BEATRIZ BIOCINI                     )
          Petitioner                    )
                                        )       ALIEN No 91-188-333
                                        )
v.                                      )       MOTION TO    SCHEDULE A SOONER
                                        )       HEARING, REGARDING CONFIDENTIAL
UNITED STATES OF AMERIVA                )       INFORMATION THAT MAYBE VALUE TO
          Respondent                    )       GOVERNMENT.
                                        )

                                                SCHEDULE INDIVIDUAL HEARING
                                                DATE: SEPTEMBER 19, 2005

    **COMES NOW Petitioner**  Ana Beatriz Biocini requesting this Honorable Court

to accept this motion and give petitioner the opportunity to be heard.

    As the Court is aware my son has been reciving clinical psychiatry treatment

since, 2002 for major depresion in relation with my absence and pending stressors

actually a medicine to cope with this probugate separation.

    Your Honor I'am trying to find the way to be with my son in the shorter time

possible because I fear his mental health and physical well being.  this is the main

reason I completed the Drug Program to qualify for an early released that supposed

to be on March 2, 2005.  Unfortunatelly the INS detainer was placed on me January

11, 2005 stopped me of the benefits the early release until clear up.  (See Attached)

    Your Honor  I do have conficential information that I believe would be

concerned the INS authorities at some point.

    I would like to disclosed that information to the trial Attorney in order

avoid deportation and save my life after wards to be with my son.

I heard from an Immate who was at the hearing on May 16 that there was some kind of discussion about some one who was giving information to the government about INS issues in order to get back the green card and clear the records I's that true?.

Let me approached abou what kind of information I have . I was informed of places in the Bay Area which has been used by some organization to sell Fraud documents as Green Cards and Social Securities. In Addition the same source in told me to know somebody who works in the INS service in Los Angeles who is selling Citizenships too.

I saw this source before  I came to Dublin before my incarceration that was January  16, 2004.

I can provide more details if the Government is interested and considered this information valuable to them.

Your Honor does this information will be enough to make an agreement with the Government and expedite a sooner hearing to discussed this issue with the court and the trial attorney.

For all theser reasons I pray this Honorable Court to accept this motion and give petitioner Biocini the opportunity to be heard, and help her to go back to her son.

Dated this 10, day of June , 2005


Respectfully Submitted

Ana Beatriz Biocini
Federal Correctional Insitution
5701 8th St Camp Parks
Dublin, Ca. 94568



PS 5330.10
CN-03 October 9, 1997
Attachment J, Page 1

### NOTICE OF RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION AND PROVISIONAL § 3621(e) ELIGIBILITY

TO:___ANA BEATRIZ BIOCINI_____    REG NO:__93061-011_____

FROM:___Sue Feder, Psy.D._____    INSTITUTION:__FCI-Dublin___

TITLE:_____DAPC_____    DATE:___3-4-2004_____

**SECTION 1 - RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION**

YOU HAVE REQUESTED PARTICIPATION IN THE BUREAU'S RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM. MY REVIEW OF YOUR CASE INDICATES THAT YOU **DO** MEET THE ADMISSIONS CRITERIA FOR THE RESIDENTIAL DRUG ABUSE PROGRAM. IT APPEARS THAT YOU **DO** QUALIFY TO PARTICIPATE IN THE RESIDENTIAL PROGRAM. (IF THE INMATE IS FOUND TO NOT QUALIFY, STATE THE REASON(S) BELOW).

Comments:

**INSTANT OFFENSE(S):  CONSPIRACY TO DISTRIBUTE COCAINE**_____

**PRIORS:**  None_____

**PENDING CHARGES:**  None Known_____

**DETAINER:**  **NONE KNOWN**_____

**SUBSTANCE USE:** Per PSI, Ms. Biocini reported alcohol and cocaine use. Specifically, daily use of cocaine prior to her arrest as well as marijuana use._____

PS 5330.10
CN-03 October 09, 1997
Attachment J, Page 2

**SECTION 2 - PROVISIONAL § 3621(E) ELIGIBILITY** - TO BE COMPLETED ONLY IF THE INMATE HAS COMPLETED OR QUALIFIES FOR THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM.

FOR RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM GRADUATES TO BE ELIGIBLE FOR EARLY RELEASE, THEY MUST (DAPC must initial):

> X    NOT BE AN INS DETAINEE.
>
> X    NOT BE A PRE-TRIAL INMATE.
>
> X    NOT BE A CONTRACTUAL BOARDER.
>
> X    NOT BE AN "OLD LAW" INMATE.
>
> X    NOT HAVE A CURRENT CRIME THAT IS AN EXCLUDING OFFENSE IN BOP CATEGORIZATION OF OFFENSES POLICY (Mark an 'X' in the appropriate block below).
>
> > X    NOT A CRIME OF VIOLENCE AS CONTAINED IN BOP CATEGORIZATION OF OFFENSES POLICY.
> >
> > X    NOT AN EXCLUDING CRIME BY THE DIRECTOR'S DISCRETION IN CATEGORIZATION OF OFFENSES POLICY
>
> X    NOT HAVE ANY PRIOR FELONY OR MISDEMEANOR ADULT CONVICTION FOR HOMICIDE, FORCIBLE RAPE, ROBBERY, AGGRAVATED ASSAULT, OR SEXUAL ABUSE OF CHILDREN.
>
> X    UNDERSTAND THAT NEARING THE TIME OF YOUR RELEASE, THE WARDEN WILL DETERMINE IF YOU ARE ELIGIBLE FOR TRANSFER TO A COMMUNITY-BASED PROGRAM. IF YOU ARE NOT ELIGIBLE, YOU CANNOT COMPLETE THE COMMUNITY TRANSITIONAL SERVICES PORTION OF THE DRUG PROGRAM, AND THEREFORE, YOU MAY NOT RECEIVE A § 3621 (e) RELEASE.

MY CURRENT ASSESSMENT, IN CONSULTATION WITH YOUR UNIT TEAM, IS THAT IT **DOES** APPEAR THAT YOU ARE PROVISIONALLY ELIGIBLE FOR AN EARLY RELEASE. IF NOT, LIST **ALL** THE REASON(S):

Comments: No Detainers. Provisionally eligible for 3621e release.

**IF APPLICABLE, I UNDERSTAND THAT A DETERMINATION OF EARLY RELEASE FOR ME IS PROVISIONAL, MAY CHANGE, AND DEPENDS ON CONTINUED POSITIVE BEHAVIOR AND SUCCESSFUL PARTICIPATION IN ALL COMPONENTS OF THE PROGRAM, INCLUDING COMMUNITY TRANSITIONAL SERVICES.**

INMATE'S SIGNATURE _____
(indicate if refused to sign)

cc: Drug Abuse Treatment File; Unit Team (place in section 4 of inmate central file)

# AR 933-34 have been deleted.

# Please see AR 931-32

*I 9-19-05*

# CERTIFICATE OF SERVICE

I certify that the following document ___MOTION TO SCHEDULE A SOONER HEARING___

_____, was placed in the institution mailbox

(first-class postage, prepaid). Said document was sent to the following

individual on the date listed below. Pursuant to <u>Houston v Lack</u>, 487 U.S.

266 (1988). Under Title 28 U.S.C. §1746. "Pro se litigant's pleadings are

filed at the moment of delivery to prison authorities."

6-9- 2005
DATE

SIGNATURE OF PERSON MAILING
ANA BEATRIZ BIOCINI

### United States Attorney Office

United States Department of
Justice.
Executive office of Immigration
Review
550 Kearny Street  Ste 800
San Francisco, Ca. 94108

### U.S. District Court

United States Court
550 Kerny St Ste 800
San Francisco, Ca. 94108

# AR <u>936-40</u> have been deleted.

For AR <u>936</u> see AR 935
For AR <u>937-38</u> see AR 929-30
For AR <u>939-40</u> see AR 2-3



HOLLY COOPER, Esq.
UNIVERSITY OF CALIFORNIA, DAVIS
SCHOOL OF LAW
KING HALL IMMIGRANT DETENTION PROGRAM
One Shields Ave. TB-30
Davis, CA 95616
Tel: (530)754-4833

Counsel for Respondent

Assisted by Law Student, Tanya Beserra

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2006 JUL 26 P 1: 54

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VA

| | | |
|---|---|---|
| In the Matter of: | ) | File No. A91-182-333 |
| | ) | |
| BIOCINI, Ana | ) | **RESPONDENT'S OPENING** |
| | ) | **BRIEF ON APPEAL FROM** |
| | ) | **JUDGES DENIAL OF MOTION** |
| | ) | **TO RECONSIDER** |
| Respondent, | ) | |
| | ) | |
| In Removal Proceedings. | ) | Brief Deadline: 7/27/2006 |
| | ) | |

### RESPONDENT'S OPENING BRIEF ON APPEAL
### FROM JUDGE'S DENIAL OF MOTION TO RE-CONSIDER

### Introduction

The Respondent, Ana Biocini ("Ms. Biocini") is a native and citizen of Colombia

who first entered the United States in 1981 and was admitted as a lawful permanent

000941



resident in 1989. IJ Decision at 1. On April 28, 2003, Ms. Biocini was convicted of

violating U.S.C. § 846, Conspiracy to Distribute Cocaine. The Department of Homeland

Security ("DHS") initiated proceedings against Ms. Biocini on January 28, 2005, by

filing a Notice to Appear ("NTA") with the Court. Exhibit 1; IJ Decision at 1. The

NTA found Ms. Biocini removable under Section 237 (a)(2)(A)(iii) of the Immigration

and Nationality Act ("INA") as an alien convicted of an aggravated felony drug

trafficking offense. *Id.*

On May 16, 2005, Ms. Biocini submitted an application for asylum and

withholding of removal and deferral of removal under the Convention Against Torture.

The Immigration Judge ("IJ") denied all applications and designated Colombia as

the country of removal. IJ Decision at 8. Ms. Biocini is challenging the judge's decision

to deny re-consideration of her case. Ms. Biocini contends the judge committed legal and

factual errors as to whether she would be killed in Colombia for serving as a U.S.

informant against drug cartels in Colombia and whether the Colombian government is

aware of such brutal retaliation and fails to protect informants.

Ms. Biocini, through counsel, contends that the IJ erred in finding she will not

face torture or death upon returning to Colombia. IJ Decision at 7. Ms. Biocini has

openly informed against transnational drug trafficking schemes between the U.S. and

Colombia. Her testimony was used to successfully prosecute a fellow Colombian drug

trafficker. More importantly, her status as an informant is openly known in Colombia

and she has no offer of protection from the Colombian government. Expert testimony

validates Ms. Biocini's fear of assassination and describes drug cartels as infamous for

A-091-182-333

000942



punishing disloyalty with murder. Moreover, a similarly situated drug informant known to Ms. Biocini in the same cartel was murdered for his disloyalty.

The Colombian government is aware of reprisals by drug cartels and fails to protect the vulnerable group. The current Colombian government continues to foster ties with paramilitary groups and drug cartels and is essentially immune from prosecution for their role in the cartel schemes. *See* Ex. D-1, D-4, D-6. The Colombian government not only turns a blind eye to torture committed by paramilitary and security officers, but has a reputation for inefficient, corrupt and bureaucratic management. *See* Ex. D-6 at 23.

### Issues Presented

1.  Whether the IJ erred in denying deferral of removal under the Convention Against Torture, when Ms. Biocini acted as a U.S. informant against Colombian drug cartels and her status as an informant is known in Colombia?

2.  Whether the Colombia government is aware of brutal drug cartel retaliation against disloyal informants and fails to protect such informants from assassination?

### Factual History

#### I. Ms. Biocini's Immigration and Criminal History

Ana Beatriz Biocini arrived in Miami, Florida on February 11, 1981 as a nonimmigrant visitor, living in Miami for many years before moving to California. IJ Decision at 2. On May 23, 1987, she became a Lawful Temporary Resident and later a Lawful Permanent Resident on May 1, 1989. IJ Decision at 1.

A-091-182-333

000943

Ms. Biocini was arrested on May 5, 1995. *IJ Decision* at 2. *She pleaded guilty to one count of conspiracy to distribute cocaine with the intent to sell on June 6, 1998. Id.* This was her first and only felony conviction. *Id.* From May 24, 1995 to January 16, 2004, Ms. Biocini was on supervised release, and on January 16, 2004, she began her 30-month long sentence at the Federal Correctional Institute in Dublin, California. *Id.* She is presently at the Lerdo Pre-Trial Facility in Bakersfield, CA, in immigration custody awaiting the outcome of her appeal.

After her arrest, Ms. Biocini accepted a plea agreement even though she was afraid of debriefing FBI agents about Colombian cocaine suppliers. IJ Decision at 2. In exchange for her cooperation, the U.S. Attorney told Ms. Biocini that special visas would be issued to keep her and her family in the United States. Ms. Biocini later realized, however, that the plea agreement failed to mention the special visas that had been promised. Years later, the U.S. Attorney denied Ms. Biocini's request for an "S" visa. *See* Ex. A-1 and C-2.

## II.    Ms. Biocini's Cooperation and Role as an Informant with the U.S. Government

Ms. Biocini became a U.S. informant and assisted the U.S. government in obtaining substantial information about Colombian cocaine trafficking. She provided information about political officials with ties to Miguel and Gilberto Rodriguez-Orejuela, founders of the Cali cartel, and to other cocaine suppliers linked to the Cali and Medellin cartels. *See* Ex. C-2. Ms. Biocini also assisted the FBI by providing them with over forty names, numbers, and addresses of individuals connected to the cocaine business in Colombia. *See* Ex. A-2 through A-4 and E-2 through E-6 and IJ Decision at 2. She

000944

reviewed recorded telephone conversations and continued to debrief the government from 1998- 2001. *See* C-2.

The U.S. Attorney General asked Ms. Biocini to testify against Noberto Duarte. She twice prepared to testify for the government against him on charges of conspiracy to distribute cocaine. As a result, Ms. Biocini was instrumental in Noberto Duarte's decision to accept a plea agreement. Agents conceded that Ms. Biocini's willingness to testify spurred Mr. Duarte decision to cooperate with the FBI. *Id.*

Ms. Biocini additionally volunteered to work for the FBI and negotiate a deal with a local narcotics dealer named Joe tied to a Colombian supplier as a part of a set-up. *Despite Ms. Biocini's fear of reprisal* by Colombian drug dealers, she agreed to help the government, sacrificing her personal safety. *Id.*

### III. Ms. Biocini's Contact with Powerful Members of the Drug Cartel

Ms. Biocini acted as a U.S. informant and has close ties to three key players in the narco-trafficking industry. Tr. At 23, 26, 83. Ms. Biocini had relationships with Elias Giannakapolous ("The Greek"), Felix Bernal Fernandez ("Bernal") and Hernando Velazco ("Gordo"), each of whom were intimately involved in the cocaine business and had connections with agents of the drug cartels. Ms. Biocini provided the FBI with extensive information about all three of these powerful players.

#### A. Elias Giannakapolous- "The Greek"

Ms. Biocini met the Greek in 1985, became familiar with his operations, and assisted him with drug transactions by meeting and escorting clients. Tr. at 51, 53. The Greek bought and sold more than thirty kilograms of cocaine a week at times in his two principal places of operation: one on Miami and the other in California. Tr. at 53. He

A-091-182-333

000945

would transport cocaine from Miami to California in coat hangers that he fashioned. These hangers were covered with clothes and placed on carry-on luggage. Ms. Biocini was not only aware of this process, but she also saw large suitcases of cocaine and vast quantities of cash. Tr. at 54. The fact that The Greek was able to obtain such large quantities of cocaine indicates the extent of his involvement with the Colombian cartels, who supplied him with bulk quantities of cocaine. Ms. Biocini testified that he was a very powerful man who had direct ties to Colombian drug cartels. Tr. at 55. She fears him because of his ties to the cartels. *Id.*

### B. Felix Bernal Fernandez- "Bernal"

Ms. Biocini also provided the FBI with information on her ex-boyfriend, Felix Bernal Fernandez ("Bernal"). The two met in 1993 and developed a personal relationship in 1994, during which Bernal propositioned Ms. Biocini for cocaine. Tr. at 57- 59, 74. She told him she was not interested in the cocaine business, but Bernal persisted to inform her of some of his drug transactions and invite her to become involved. Tr. at 58, 74.

Ms. Biocini fears Bernal because of his violent temper, ties to mutual acquaintances in Colombia, and knowledge of her and her family. Tr. at 24, 63. Bernal not only had Ms. Biocini's contact information, but knew of several of her friends in Colombia. He also was immediately aware of her arrest, leading Ms. Biocini to believe that he had been trying to frame her from the beginning. Bernal had also told Ms. Biocini that he would kill anyone whom he knew to be a U.S. informant. Tr. at 61.

6

A-091-182-333



## IV.  Drug Cartels Are Aware of Ms. Biocini's Disloyalty and Status as An Informant

Gordo, who worked as an informant for the U.S. government after his arrest, was assassinated after his removal to Colombia.  He had met Ms. Biocini in the 1970's in Cali through mutual friends.  Tr. At 27- 28.  The two did not become well-acquainted until Gordo came to the U.S. in 1994 and sought out Ms. Biocini.  Tr. At 29.  He asked her to assist him in an operation involving the transport of forty kilograms of cocaine or more a week from California to New York.  While she refused his proposition, he continued to approach her with other business propositions, such as property investment,  that Ms. Biocini discovered were a sham.  Tr. at 35.

After the FBI arrested Gordo, he agreed to testify against Ms. Biocini as a part of his plea agreement, providing the FBI with false and misleading information about her and her family.   Tr. at 43.  Some time later, Gordo was removed to Colombia.  Tr. at 44.  There, he discussed Ms. Biocini's arrest and cooperation against drug cartels with others in Cali. *Id.*  In the summer of 2004, Gordo was shot and killed by armed assassins in the middle of the afternoon in Cali.  Tr. at 45.  Ms. Biocini believes he was killed because of his role as a U.S. informant.  Tr. at 47.  Ms. Biocini fears she will suffer the same fate if she is removed to Colombia.  Tr. at 84.

### V.  Ms. Biocini's Life Since Her Arrest

While Ms. Biocini was on supervised release, she worked and took classes to improve her job prospects and become a contributing member of society.  She completed a certificate for Computerized Accounting in 1999 and took courses in Web Design, Networking Essentials, Stock and Bond Investment, Fashion Industry Marketing, and Payroll and Business Taxes at Cañada College in Redwood City, California to further her

000947

career. In 2002, Ms. Biocini completed a certificate in Integrated Circuit Mask Design at Silicon Valley. In 2003, she secured a position as Junior Accountant for Pacific Graduate School of Psychology. *See* Ex. G-5 and G-6. Ms. Biocini is a 52-year old mother of an 18-year old boy who poses no threat to society. She would like to work hard, contribute to society and take an active role in her son's life.

VI. **The Colombian Government Participates in Drug Trafficking And Is Acutely Aware of Assassinations of Disloyal Cartel Members And Fails To Protect Informants**

After more than forty years, Colombia continues to suffer from internal armed conflict between government forces and terrorist groups. *See* Ex. D-3 at 12. The country remains one of the primary producers of cocaine consumed in the U.S. *See* Ex. D-9. In addition, the boundaries between the Colombian government, terrorist groups, and drug cartels have become indistinguishable. *See* Ex. D-6.

There are three major terrorist groups, Colombian Revolutionary Armed Forces (FARC), the National Liberation Army (ELN), and the United Self-Defense Forces of Colombia (AUC) , who violate domestic and international humanitarian laws by committing unlawful killings, kidnapping civilians and military personnel, torturing captives, displacing populations, and recruiting child civilian soldiers. *See* Ex. D-3 at 13. In addition, the present Colombian government of Alvaro Uribe is said to be initiating legislation to grant impunity for members of the various paramilitary groups, armed forces, or guerillas who have committed atrocities such as war crimes or crimes against humanity. *See* Ex. D-2. According to the U.S. Department of State's *Country Reports on Human Rights Practice 2004,* impunity remained the core of the country's human right's problem in Colombia. *See* D-3 at 1.

8                           A-091-182-333

These terrorist groups have also become involved in drug production and trafficking activities for money. Each of the major terrorist groups competes for control of key coca cultivation areas "and their involvement in narcotics is a major source of violence and terrorism in Colombia." *See* Ex. D-4 at 15. As a result, the terrorist groups and drug cartels are no longer two separate groups with separate interests, but rather ones with a symbiotic relationship. "Drug mafia bosses have referred to paramilitary militia forces for security, assassination and terrorist services. Over the years, drug mafia bosses have become more and more involved with the paramilitaries to the point where, in some cases, there is no difference between a Colombian drug boss and a Colombian paramilitary commander." *See* Ex. D-6 at 18- 19.

## ARGUMENT

I. **MS. BIOCINI WILL BE ASSASSINATED BY COLOMBIAN DRUG CARTELS FOR PROVIDING U.S. ENFORCEMENT AGENCIES DETAILED INFORMATION ABOUT TRANS-NATIONAL COCAINE TRAFFICKING SCHEMES**

Under Article 3 of the Convention Against Torture, it is forbidden to remove an individual to a country if "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Ms. Biocini carries the burden of proof by presenting "evidence establishing 'substantial grounds for believing that she would be in danger of being subjected to torture in the country of removal." *Kamalthas v. INS,* 251 F.3d 1279, 1284 (9th Cir. 2001). This standard does not require "clear and convincing" evidence or "beyond a reasonable doubt," but rather a 51% chance of being tortured. *In re J-E,* 23 I & N Dec. 291 (BIA 2002) (Rosenburg, J.

A-091-182-333

000949

and Espenoza, J., dissenting) (referencing *Matter of Patel*, 19 I & N Dec. 774, 783 (BIA

1988); *Khup v. Ashcroft*, 376 F. 3d 898, 908 (9th Cir. 2004); IJ Decision at 5. Credible

testimony can be sufficient to sustain the applicant's burden of proof regarding the

likelihood of torture. *Id.* at 302.

### A. Ms. Biocini's Publicized Status as a U.S. Informant Who Provided Detailed Accounts of Various Drug Operations and Key Figures in the Industry Puts Her Life in Immediate Danger in Colombia.

Ms. Biocini is a known government informant who will more than likely be

tortured or killed if she is removed to Colombia. According to her testimony, Ms.

Biocini indicated that Gordo made her cooperation with the U.S. government known to

many people in Colombia. Tr. 44. IJ Decision at 3. She was also instrumental in the

Noberto Duarte's decision to make a plea agreement; therefore, suppliers and cartel

members in Colombia are bound to seek retribution.

Expert witness, Professor Nagle, who herself had to flee from Colombia for fear

of her life, stated that whistleblowers have nowhere to hide in Colombia. Ex. D-1. The

drug cartel intelligence network is highly sophisticated and permeates all levels of

society. *Id.* "The Cali narcotraffickers are so pervasive in the economic and social

livelihood of Cali that to reject their influence or to inform against them is tantamount to

a death sentence." *Id.* at 7. Professor Nagle, a native of Colombia who served as a judge

and dealt with pervasive corruption, found that Ms. Biocini's "treachery against

narcotraffickers against whom she informed" will not go unpunished if she's forced to

return to Colombia. *Id.*

While the IJ conceded that drug cartels remain powerful and drug-related violence

is prevalent, IJ Decision at 5, he failed to recognize that the social situation and

000950

corruption in Colombia has worsened.  Ex. D-6 at 2.  According to a CRS report for Congress, Colombia still has the highest kidnapping and murder rate in the world.  Ex. J-1, 7.  According to expert witness, Professor Lowell Gustafson, Colombia now has the third largest displaced population in the world due largely to the drug war.  *Available at* http://www.state.gov/r/pa/ei/bhn/35754.htm.  As a result, the Colombian state is still unable to provide its citizens or its own officials an acceptable level of personal security. *Id.*

The IJ praised the success of Plan Colombia, IJ Decision at 6- 7, but corruption and human rights abuses have not been effectively tackled.  While the number of fumigated coca plantations appears impressive and is often quoted as a success in the war on drugs in Colombia, new crops quickly replace and outnumber those that have been destroyed.  Indeed the number of plantations does not seem to be decreasing and cocaine prices remain at an all-time low on the streets of the United States.  *Id.* at 3, 30

**b. Ms. Biocini's Instrumental Role in Securing the Plea Agreement of Drug Dealer, Noberto Duarte, Demonstrates to the Cartels that She is Disloyal, Placing Her Life in Imminent Danger in Colombia.**

Following her plea agreement, Ms. Biocini provided substantial assistance to the U.S. government regarding cocaine trafficking.  IJ Decision at 2.  After her initial interview with the FBI, Ms. Biocini spent several days with federal agents reviewing an extensive list of narcotics contacts.  She continued to cooperate, meeting with agents on nine more occasions to answer questions and provide information.

As a result of her interactions with the FBI, Ms. Biocini played a direct role in Noberto Duarte's decision to forego a criminal trial and accept a plea agreement with the government.  The IJ stated that "a U.S. attorney told Respondent that her assistance was a

000951

substantial factor in his [Noberto Duarte's] decision to plead guilty." (IJ Decision, 2 ¶ 5) Rather, the government's Sentence Memorandum and Motion to Depart Pursuant to U.S.S.G. § 5k1.1 ("Sentencing Memo) concluded that Ms. Biocini satisfied the criteria of providing substantial assistance to the United States. The government further acknowledges that Ms. Biocini dedicated numerous days with FBI investigators and the Assistant U.S. Attorney preparing for the pending trial of Mr. Duarte. Twice the trial was re-scheduled and twice Ms. Biocini had to prepare to testify. "Biocini from the start of her cooperation expressed an earnest willingness to act as a witness against any other of the co-defendants in this matter. She made herself readily available for trial preparation and conducted herself professionally" Ex. C-2 (Sentence Memorandum, pp. 4- 5).

Mr. Duarte was operating a cocaine trafficking operation in Northern California and Hawaii, making it likely that he had numerous contacts to the Colombian cartel. Ex. A-1. He was well-acquainted with Steve Solomon and Steve Seigal, two former deliverymen for the Greek. Mr. Duarte's other acquaintances will most likely be aware of Ms. Biocini's cooperation with the U.S. government, placing her life in even graver danger.

Ms. Biocini divulged information about Colombian cocaine trafficking and cooperated with the government until 2001. Ex. A-1. The intelligence network of the Cali Cartel is almost certainly aware of her interactions with the U.S. government. The IJ found Ms. Biocini's testimony credible; credible testimony can be sufficient by itself to sustain the applicant's burden of proof regarding the likelihood of torture. 8 C.F.R. § 1208.16(c)(2)(2005): *Matter of J-E,* 23 I & N Dec. 291, 302 (BIA 2002). Therefore, it is extremely probable that she will face torture if she is removed to Colombia.

000952



### c. Cartels Assassinated a Similarly-Situated Drug Informant, Gordo, a U.S. Informant Who was Subsequently Executed in Broad Daylight after His Removal to Colombia.

Ms. Biocini's testimony indicated that Gordo feared retribution as a result of becoming a U.S. informant.  Gordo was afraid of his cooperation with the U.S. government being leaked to Colombian drug cartels and that he and his family would be in grave danger as a result.  *See* Ex. E-5.

Circumstances surrounding his death strongly implicate the Colombian drug cartels in Gordo's assassination.  Deeming these facts to be true, in addition to the superior intelligence networks of the drug cartels, one can reasonably infer that Ms. Biocini will be killed if she returns to Colombia.

The IJ falsely thought the precise identity of Gordo's assassins was necessary to prove that Ms. Biocini may face a similar fate if she returns to Colombia.  IJ Decision at 6.  On July 9, 2004, Gordo was brutally killed in broad daylight by the *emisarios de la muerte* (emissaries of death).  Gordo was shot in the head and face by two assassins who were stalking him outside a building in Cali.  While there was no witness to the murder, reports of two men dressed from head to toe in black who fled the scene soon circulated. *See* Ex. E-1.  This style and manner of murder indicates a revenge killing carried out by organized terrorists working for the Colombian drug cartels.

According to the Ninth Circuit, Ms. Biocini is not required to provide direct evidence of Gordo's murder because factual circumstances alone can constitute sufficient circumstantial evidence of a prosecutor's identity or motive.  *Canales-Vargas v. Gonzales,* 441 F.3d 739, 744 (9th Cir. 2006).  Circumstantial evidence may include, *inter alia,* the timing of the persecution and signs or emblems at the sight of the

A-091-182-333

000953



persecution. *Id.* In light of Gordo's death in broad daylight and other evidence regarding the possibility of torture, Ms. Biocini has established a well-founded fear of future persecution by a preponderance of the evidence if she is removed to Colombia. The cartels have not contacted her, but according to the Ninth Circuit, certainty of persecution is not necessary. *Id.* The reputation of an organization's ruthlessness is sufficient to demonstrate that torture or persecution may occur. *Id.* at 746. Ms. Biocini is a known U.S. informant in Colombia and a prime target for retaliation by the drug cartels. *See* Ex. D-1; Ex. I-1 at ¶ 25.

## II.    THE COLOMBIAN GOVERNMENT IS ACUTELY AWARE OF ASSASSINATION OF INFORMANTS AND FAILS TO PROTECT THE INFORMANTS

### a.    Human Rights Reports Uniformly Denounce Human Rights Conditions in Colombia.

For relief under CAT, a petitioner only needs to demonstrate that the government is aware of a third party's torturous activity and does nothing to intervene or prevent it. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003).

According to Human Rights Watch, the Colombian government is in collusion with paramilitaries and will not provide protection for Ms. Biocini. Ex. J-6. The Colombian government is now in the process of allowing paramilitary commanders to launder their money while maintaining their wealth and control over the country. *Id.* These groups receive their money from drugs and extortion and have killed thousands of civilians with impunity. *Id.* "The paramilitaries, in particular, are notorious for their atrocities, which include countless massacres, abductions, and disappearances." *Id.*

The IJ suggested that public safety conditions in Colombia have improved due to police deployment to areas previously occupied by paramilitary groups. IJ Decision at 7.

A-091-182-333

000954

The IJ additionally stated that the "Colombian government has recently enacted legislation to combat money laundering and related illegal financial flows associated with narcotics trafficking." IJ Decision at 7. However, this does not address the spread of cartel and the "hydra effect," whereby one cartel replaces another one upon abolishment. Ex. D-6.

The "hydra effect" also appears in relation to attempts to demobilize the armed groups in Colombia. In a report exploring the demobilization of the paramilitaries, Amnesty International expressed grave concerns over the need for more oversight of this process by the Colombian government. Amnesty International also reported that legislation passed to regulate this demobilization process "fails to meet Colombia's international obligations on victim's rights to truth, justice, and reparation. . . and will not guarantee that demobilized paramilitaries are not simply reintegrated into the armed conflict." Most notably, Amnesty International determined that paramilitarism has not been dismantled, but simply re-engineered." Ex. D-8.

While agencies such as the Anti-Corruption Task Force Unit have been created to fight issues such as corruption, the reports also indicate that corruption is still rampant in Colombia. In a 2006 Human Rights Watch reported that the Colombian military is still tolerating and committing abuses in collaboration with members of paramilitary groups. Ex. J-6 at 2.

A-091-182-333

000955




**b. No Safe Place Exists in Colombia for Ms. Biocini Due to the Widespread Reach of the Drug Cartels and The Corruption and Policy of Impunity for Human Rights Violations of the Colombian Government.**

The IJ conceded the validity of evidence submitted by Ms. Biocini regarding the brutality and violence cartels use to further their goals. IJ Decision at 6.

The Colombian government has made strides in superficial areas, but drug cartels and paramilitary forces maintain a stronghold in the country. According to a 2005 report by International Narcotics Control Strategy Report (INCSR) for the Department of State, illegal armed groups still control areas in Colombia that have a high concentration of coca and opium cultivation. Ex. D-5. The groups' involvement in trafficking is a major source of violence and terrorism in Colombia. *Id.*

While the struggle to eradicate coca plants continues, the government still lacks the ability to protect its citizens. Militant groups, such as FARC and AUC, have become increasingly sophisticated as a result of their involvement in drug and kidnapping activities, according to the Colombian Embassy. *See* Ex. I-3. These groups work in close collaboration with other international terrorist groups and implement tactics that create increased terror. As a result, U.S. informants, such as Ms. Biocini, have been killed when they returned to Colombia. *Id.*. Both expert witnesses in Ms. Biocini's case, affirmed that Ms. Biocini's return to Colombia would most likely result in her murder.

As the IJ stated, Ms. Biocini submitted documentary evidence establishing the far-reaching power and danger of Colombian drug cartels both in the country and abroad. IJ Decision at 6. Some view the Cali Cartel as being the most powerful drug organization

000956

 

in the world. Their influence permeates ever sector of society and every area of the country. Ms. Biocini will not be safe anywhere in Colombia.

### c. The IJ Incorrectly Compared Ms. Biocini's Situation With Professor Nagle's

The IJ placed undue emphasis on Professor Nagle's own personal experiences and improperly analogized them to Ms. Biocini's case. Professor Nagle's background is entirely different from Ms. Biocini's; she was a judge in Colombia until assassination attempts by drug traffickers forced her to flee for the U.S. *See* Ex. D-1. While it is true that Professor Nagle has not encountered drug traffickers on her trips back to Colombia, she was either in the country for an abbreviated period of time or accompanied by bodyguards. IJ Decision at 4. If Ms. Biocini returns to Colombia, it will be on a permanent basis and she will carry the label of "U.S. informant" wherever she goes. Unlike Professor Nagle, Ms. Biocini will not have any protection from body guards. Additionally, Professor Nagle has provided expert testimony on drug cartels, but never dealt drugs or was intimately connected with its powerful members as Ms. Biocini was. Her situation cannot be accurately equated to Ms. Biocini's.

### d. The IJ Overlooked Professor Lowell Gustafson's Critical Testimony That Informants Are Assassinated in Colombia

The IJ failed to consider fundamental evidentiary support for Ms. Biocini's request for relief when he overlooked Professor Gustafson's testimony. Professor Gustafson found that Ms. Biocini not only had reason to fear for her life if she returned to Colombia, but that the Colombian government would not be able to provide adequate security for Ms. Biocini. Ex. I-3. He stated that in 2005 "FARC was held responsible for more killings than any time since President Uribe took office." *Id.* at 4. FARC and AUC have both become stronger and increasingly sophisticated as a result of their involvement

A-091-182-333

000957



in drug and kidnapping activities, shifting their tactics to create increased terror. *Id.* Therefore, the IJ's opinion that the Colombian government is "actively combating drug trafficking and drug traffickers" is not substantiated by any concrete results that have brought about any change. IJ Decision at 7. Professor Gustafson conceded that others, like Ms. Biocini, who have cooperated with the U.S. government, have been killed when they returned to Colombia. Ex. I-3 at 5. He is persuaded that Ms. Biocini's removal to Colombia will most likely "result in her murder and perhaps the murder of her family members." *Id.*

## Conclusion

For the foregoing reasons, Ms. Biocini respectfully requests that the Board grant her motion to reconsider the IJ's decision denying her application for deferral of removal under the Convention Against Torture.

**Dated:** July 25, 2006

Respectfully submitted,

**HOLLY COOPER**
**Immigration Law Clinic, UC Davis**
**School of Law**
**Attorney for the Respondent, Ana**
**Biocini**

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2006 JUL 26 P 1: 54

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

A-091-182-333

000958

**In the Matter of Biocini, A91-182-333**

**CERTIFICATE OF SERVICE**

On July 25, 2006, I served the following document(s): Respondent's Opening Brief on Appeal from Judge's Denial of Motion to Re-Consider upon the parties in said action by placing a true and correct copy in a sealed envelope and each envelope addressed as follows:

**USICE Office of the District Counsel**
**550 Kearney Street, Ste. 1000**
**San Francisco, CA 94108**

___ ***By Facsimile Machine (FAX).*** By personally transmitting a true and correct copy thereof via an electronic facsimile machine during regular business hours.

___ ***By Mail.*** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service and that this document, with postage fully prepared, will be deposited with the United States Postal Service this date in the ordinary course of business.

___ ***By Certified Mail.*** I am readily familiar with the business practice for collection and processing of correspondence for certified mailing with the United States Postal Service and that this document with postage fully prepaid, will be deposited with the United States Postal Service on this date in the ordinary course of business.

___ ***By Overnight/Express Mail.*** I am familiar with the business practice for the collection and processing of Overnight/Express Mail with the United States Postal Service and/or Overnight service provider. Such correspondence will be deposited with the facility regularly maintained by the United States Postal Service for receipt of express mail or other overnight service providers/entities (i.e., Federal Express, United States Parcel Service, etc.). For receipt of Overnight Mail on the same day in the ordinary course of business.

___ ***By Personal Service.*** By personally delivering a true copy thereof to the office of the addressee above.

I declare under penalty of perjury that the foregoing is true and correct. Executed On July 25, 2006, in Davis, CA.

Holly Cooper, Esq.
Counsel for the Respondent

*Respondent's Opening Brief on Appeal from Judge's Denial of Motion to Re-consider*
*In the Matter of Biocini, A91-182-333*