HOLLY S. COOPER SBN 197626
U.C. DAVIS IMMIGRATION LAW CLINIC
University of California, Davis School of Law
One Shields Ave. TB-30
Davis, CA 95616-8821
Email: hscooper@ucdavis.edu
Tel:  (530) 752-6942
Fax:  (530) 752-0822

Attorney for Petitioner
ANA BIOCINI

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BIOCINI,<br>A 91 182 333, an individual<br>        Petitioner,<br><br>vs.<br><br>MICHAEL MUKASEY, in his official capacity as Attorney General of the United States; MICHAEL CHERTOFF, in his official capacity as Secretary of the Department of Homeland Security; NANCY ALCANTAR in her official capacity as San Francisco Field Office Direction of U.S. Immigration and Customs Enforcement, Detention and Removal; DONNY YOUNGBLOOD, in his official capacity as Sheriff of Kern County Sheriff's Department and Lerdo Detention Facility,<br><br>        Respondent(s) | Case No.<br><br>**MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: To be Assigned<br>Date/Time: To be Assigned |

1

# INTRODUCTION

Petitioner Ana Biocini moves this Court to issue a preliminary injunction to stay further detention in the custody of United States Immigration and Customs Enforcement ("ICE") pending a final resolution of her Petition for Writ of Habeas Corpus. An order restraining detention is necessary to preserve her constitutional rights and to prevent irreparable injury.

Petitioner Ana Biocini is a native and citizen of Colombia and a United States lawful permanent resident for over eighteen years who was found removable under Section 237 (a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony drug trafficking offense.

As a result, Ms. Biocini is detained presently at the Lerdo Pre-Trial Facility in Bakersfield, California, in immigration custody awaiting the outcome of her removal proceedings for almost two years. Although the merits of her claims against removal are substantial, the judicial review process is likely to take over a year. Ms. Biocini is detained under 8 U.S.C. § 1226(c), one of three general immigration detention statutes that govern the detention of non-citizens whom the government is trying to remove. *See* 8 U.S.C. § 1226 (authorizing detention of aliens pending a determination of removability). These "general detention statutes" do not explicitly authorize prolonged detention, unlike certain detention statutes that explicitly do authorize prolonged detention in a national security context, such as 8 U.S.C. 1226(a), 8 U.S.C. § 1537.

The Ninth Circuit has recently construed that these detentions statutes do not specifically authorize prolonged detention. In *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078, 1084 (9th Cir. 2006), it was held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period," and required "immediate release" of a detainee held nearly five years under 8 U.S.C. § 1225(b). Another recent influential Ninth Circuit case, *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) construed 8 U.S.C. § 1226(c) to authorize mandatory detention only where removal proceedings were "expeditious" and ordered a bond hearing where detention lasted for nearly thirty months. Furthermore, the United States Supreme Court, along with the Ninth and Sixth Circuit, have agreed that although

Congress has authorized the government to detain immigrants under 8 U.S.C. § 1226(c) for a brief period necessary for removal proceedings, when the detention is indefinite and exceeds the presumptively reasonable six month period, and the likelihood of removal is not reasonably foreseeable, the detention is not constitutionally permissible. *Demore v. Kim*, 538 U.S. 510 (2003); *Nadarajah*, 443 F.3d at 1078; *Tijani* 430 F.3d at 1242; *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003).

The government has detained Ms. Biocini for almost two years while she challenges her removal proceedings – far beyond the presumptively reasonable six months completion of removal proceedings. Furthermore, even if Ms. Biocini is not entitled to immediate release, she is at least entitled to a hearing at which the government must prove that her prolonged and on going detention is justified on the bases of factors such as danger to the community or flight risk. *Demore*, 538 U.S. at 525-26.

Ms. Biocini will satisfy the traditional standard for granting a preliminary injunction. The facts and substantive law of her case indicate a likelihood of success on the merits. The balance of hardships resulting from her prolonged detention tips in her favor. Furthermore, she continues to suffer psychological trauma and medical complications as a result of this detention, including lengthy and indefinite incarceration, separation from her nineteen year old son, separation from her other family members, and deprivation of her fundamental right of liberty.

Therefore, Petitioner respectfully requests that this Court grant her motion for preliminary injunction and order her immediate release on reasonable conditions, because the immigration detention statutes and Supreme Court and Ninth Circuit precedent do not authorize this continued detention. Alternatively, she seeks an individualized hearing, consistent with Due Process Clause, as to whether her prolonged and on going detention is sufficiently justified.

## JURISDICTION

This action arises under the Constitution, and the Immigration & Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 *et seq*., U.S. CONST. Art. I § 9, Cl. 2 (the "Suspension Clause"), and the common law. This Court may also exercise jurisdiction pursuant to 28 U.S.C. § 1331, and may

grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651. The amendments to the INA by the REAL ID Act of 2005 have no effect on the jurisdiction of this Court in actions, such as this one, challenging detention independent of removal orders. *See* H.R. REP. NO. 109-72, at 2873 (2005).

Because the Board of Immigration Appeals ("BIA") lacks jurisdiction to adjudicate constitutional issues, exhausting Petitioner's appeals before the BIA would be futile. Therefore, the general rule requiring exhaustion of judicial remedies does not preclude Petitioner from bringing this petition. *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994); *see also*, *Marquez v. INS*, 346 F.3d 892, 897 (9th Cir. 2003)(holding that waiver of exhaustion requirement appropriate for alien who was challenging the indefinite length of his detention pending removal, rather than his removability).

**STATEMENT OF FACTS**

1. Ana Beatriz Biocini arrived in Miami, Florida on February 11, 1981 as a nonimmigrant visitor, living in Miami for many years before moving to California. On May 23, 1987, she became a Lawful Temporary Resident and later a Lawful Permanent Resident on May 1, 1989.
2. Petitioner is a fifty-two year old mother of one nineteen-year old son, Peter, born in Greenbrae, California on June 14, 1988. Ms. Biocini is currently divorced from George Biocini and their son, Peter, lives with George in Mountain View, California.
3. Petitioner was arrested on May 5, 1995. She pleaded guilty to one count of conspiracy to distribute cocaine with the intent to sell on June 6, 1998. This was her first and only felony conviction.
4. From May 24, 1995 to January 16, 2004, Ms. Biocini was on supervised release, and on January 16, 2004, she began her thirty month sentence at the Federal Correctional Institute in Dublin, California. She is presently at the Lerdo Pre-Trial Facility in Bakersfield, California, in immigration custody awaiting the outcome of her Petition for Review at the Ninth Circuit Court of Appeals.

5. Petitioner acted as U.S. informant and had close ties to three key figures in the narco-trafficking industry. At Ms. Biocini's sentencing hearing, Federal Bureau of Investigation ("FBI") agent Jeffery Iverson stated that, "it was our belief that Ms. Biocini had the highest and most direct access to the…original sources in Colombia." AR 442, Exhibit G. On many occasions FBI intercept calls from Ms. Biocini to her contacts in Colombia concerning drug deals. *Id.*

6. Petitioner accepted a plea agreement with the U.S. Government to "cooperate truthfully and completely with the government" and "testify anywhere, anyplace in which she is called to testify." At her plea hearing, the government explained that "in the event that the defendant provides substantial assistance in the sole discretion of the United States, the government may make a motion for a 5(k)(1) departure."

7. Petitioner assumed that the plea agreement would include the special "S" visa, and thus proceeded to assist the government. She would not have cooperated had the U.S. Attorney not promised her that special visa that would keep her and her family in the United States. Later, Petitioner realized the plea agreement did not mention anything about the special visas as promised. Subsequent to her sentencing, the U.S. Attorney Ms. Barbara Silano denied Ms. Biocini's request for special "S" visa to keep her and her family safe after multiple requests.

8. Petitioner spent several days answering questions for the FBI office in Sacramento. She debriefed the government about numerous contacts found in her personal telephone book, including political officials and cocaine suppliers linked to the Calí and Medellín cartels. She continued debriefing the government nine more times from June 1998 to 2001. She even agreed to testify against defendant Norberto Duarte, who was involved in the dangerous and lucrative Colombian drug cartel, and she spent many days answering questions and preparing for the trial. Mr. Duarte eventually made a plea agreement. The U.S. Attorney said that Ms. Biocini's assistance was a substantial factor in Mr. Duarte's decision to plead guilty.

9. Petitioner gave the U.S. government over forty names, numbers, address of individuals connected to the cocaine business in Colombia. Many of these individuals, including two of her Colombian contacts (Hernando Velazco and Felix Bernal Hernandez) knew of her arrest. Also, both men knew petitioners worked as an informant for the U.S. government. Velazco was later removed to Colombia, and Ms. Biocini learned that he discussed her cooperation with individuals connected to the cocaine cartels in Colombia, thus putting Petitioner's life in grave jeopardy if she ever returns to Colombia. As a result of these connections and working for the U.S. government, Petitioner lives in constant fear that she will be killed if she is returned to Colombia

10. At Petitioner's sentencing hearing, Judge Breyer granted the government's U.S. Sentencing Guidelines §5K1.1 (1989) motion based on substantial assistance Petitioner provided the government. Judge Breyer declared "the government has candidly and forthrightly argued" that Ms. Biocini was of substantial assistance. AR at 383, Exhibit G. Judge Breyer added, "There is significant danger to the defendant and to her family in connection with cooperation that has been provided." AR at 461, Exhibit G. Judge Breyer further stated that Petitioner "obviously travels with a crowd that was a pretty dangerous crowd." AR at 465, Exhibit G.

11. On May 16, 2005, Petitioner submitted an application for asylum and withholding of removal and deferral of removal under Convention Against Torture. 8 C.F.R. § 208.18. The Immigration Judge denied all applications and designated Colombia as the country of removal, stating that Petitioner failed to show sufficient harm or threat of harm that would indicate a greater likelihood than not of torture.

12. Petitioner appealed on July 16, 2006. On August 31, 2006, the BIA dismissed Petitioner's appeal on the basis that Petitioner's offense was a "particularly serious crime," making her ineligible for relief under 8 U.S.C. § 1231(b)(3)(B)(ii).

13. On September 7, 2006, Petitioner requested a temporary stay of removal and submitted a Petition for Review to the Ninth Circuit Court of Appeals. Respondent submitted a Motion to Dismiss and Opposition to Petition for Stay of Removal on December 18, 2006

6

1  ("Respondent's Motion").  Respondent and Petitioner recently signed a joint motion to
2  remand to the BIA that was recently granted by the Ninth Circuit Court of Appeals.
3  14. Consequently, Ms. Biocini's current detention is pursuant to the pre-removal order
4  statute, 8 U.S.C. § 1226(c) (2006).  As such, Ms. Biocini's final removal period has not
5  commenced, and her detention is pending completion of her removal proceedings.  To
6  date, the Immigration and Customs Enforcement (ICE) has detained Ms. Biocini for
7  almost two years; her detention began on March 2, 2006.
8  15. As a result of Ms. Biocini's arrest, her son has undergone years of severe depression,
9  emotional trauma and anxiety.  He started seeing Dr. Spangler at Kaiser on a regular
10 basis to treat his mental illness, which according to Dr. Spangler, was caused by Ms.
11 Biocini's traumatic arrest.
12 16. Due to Petitioner's arrest, prolonged detention, and separation from her son, Petitioner
13 visits the psychiatrist every month to procure medication that she takes daily to assuage
14 her acute anxiety, sleeplessness, and severe stress.
15 17. Petitioner's family members including sister Clemencia and brother Hernan, both of
16 whom reside in California, say Petitioner's detention has disrupted family harmony and
17 unity due to constant anxiety and worries regarding Petitioner's fate.  Moreover,
18 Petitioner's relationship with her son suffers immensely with each passing day as he
19 grows older with his mother detained and unable to provide him maternal support and
20 affection.  The last time Petitioner saw her son was on January 16, 2004, when she self
21 surrendered.

## LEGAL ARGUMENT

### A. Petitioner Seeks A Preliminary Injunction Ordering Her Immediate Release Or, In The Alternative, A Hearing To Determine Whether Her Prolonged Detention Is Justified

To obtain a preliminary injunction, the petitioner must demonstrate "either 1) a combination of probable success on the merits and possibility of irreparable injury or 2) serious questions are raised and the balance of hardships tips sharply in [her] favor." *Barahona – Gomez v. Reno,* 167 F.3d 1228, 1234 (9th Cir. 1999); *Maharaj v. Ashcroft,* 295 F.3d 963, 966; *Nadarajah*, 443 F.3d at 1083-1084.  "The critical element in determining the test to be applied is

7

the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Benda v. Grand Lodge of Int'l Asso. of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978); *Nadarajah*, 443 F.3d at 1083-1084.

Furthermore, the federal district court has the authority pursuant to both Federal Rules of Procedure as well as precedent Ninth Circuit opinion to release prisoners such as Ms. Biocini. Pursuant to FED. R. APP. P. 23(b), which provides: "(b) Detention or Release Pending Review of Decision Not to Release. While a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court, may order that the prisoner be:

(1) detained in the custody from which release is sought;

(2) detained in other appropriate custody;

(3) released on personal recognizance, with or without surety." *Nadarajah*, 443 F.3d at 1083.

Although the federal district court has the discretion to remand bond hearings to the Immigration Judge, the federal courts also have the inherent authority to admit to bail habeas petitioners being detained by ICE. *Id.* at 1083 n.5; *Mapp v. Reno*, 241 F.3d 221, 224-25 (2d Cir. 2001).

A Supreme Court concurrence by Justice Kennedy case suggests that once civil detention becomes "unreasonable or unjustified," "a lawful permanent resident alien could be entitled to an individualized determination as to risk of flight and dangerousness." *Demore*, 538 U.S. at 532. Furthermore, the Supreme Court has held, "While alien removal proceedings are in progress, most aliens may be released on bond or paroled. 8 U.S.C. § 1226(a)(2), (c)." *Zadvydas v. Davis,* 533 U.S. 678, 683 (2001).

Even under "exceptional circumstances," the Supreme Court has indicated that a district court has broad discretion in conditioning a judgment granting habeas relief, including whether or not to release the prisoner pending appearance. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Furthermore, it has been held that federal courts are authorized, under 28 U.S.C. § 2243,

to dispose of habeas corpus matters "as law and justice require." *Franklin v. Duncan*, 891 F. Supp. 516, 518 (N.D. Cal. 1995). Moreover, FED. R. APP. P. 23 establishes the authority of the federal courts to release both successful and unsuccessful habeas petitioners pending appeal. *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987). In a Ninth Circuit case, the court stated that the "government's argument that 'this Court should not consider, let alone grant, extraordinary relief by motion where entitlement vel non to release is the very issue on appeal,' is baffling: such a release is precisely what [Rule 23] contemplates." *Nadarajah,* 443 F.3d at 1083.

### B. Petitioner Demonstrates A Probability of Success On The Merits And Raises Serious Questions Regarding Her Claim That She Faces Prolonged And Indefinite Detention And Her Current Detention Has Become "Unreasonable."

Detention pursuant to §1226(c) should be "brief," "expeditious," "reasonable," and "definite." *Demore*, 538 U.S. at 513; *Nadarajah*, 443 F.3d at 1069; *Tijani*, 430 F.3d at 1242. In *Demore*, the Supreme Court held that "[C]ongress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the *brief period necessary* for their removal proceedings." *Demore*, 538 U.S. at 513 (Emphasis added). Although the Supreme Court did not explicitly define "brief period," it stated that the majority of pre-removal detentions last less than the presumptively reasonable length of detention offered by Supreme Court in *Zadvydas*, which was six months. *Id*. at 529. The *Demore* Court cited the Executive of Office for Immigration's statistics, which provided that the average time for §1236(c) removal proceedings lasts forty-seven days, and may take up to four more months if the detained alien appeals to the BIA. *Id.* Therefore, arguably, a "brief period" of detention is "roughly a month and a half" when immigrants are detained under §1226(c), and "about five months" in cases where the immigrant chooses to appeal. *Id.* at 530.

In a Ninth Circuit case, *Tijani v. Willis*, the government detained the petitioner for thirty months. *Tijani*, 430 F.3d at 1242. The *Tijani* court held that §1226(c) requires the expedited removal of criminal aliens and "[t]wo years and four months of process is not expeditious." *Id*. at 1242. In his concurring opinion, Judge Tashima compared the petitioner's detention with the

presumptively reasonable length of detention offered in *Zadvydas*, which was six months, and the "brief period" of detention as provided in *Demore*, which was five months. *Id*. at 1249. Consequently, he found that thirty months of pre-removal detention was clearly unreasonable and stated that the "sheer length" of the detention violated the constitution. *Id*. He concluded that prolonged indefinite detention, based on the mere fact that the ICE may someday remove the petitioner, was clearly a violation of the petitioner's due process rights. *Id*.

In the Ninth Circuit case of *Nadarajah v. Gonzales,* the court ruled that general immigration statutes do not authorize the Attorney General to incarcerate detainees for an "indefinite period." *Nadarajah*, 443 F.3d at 1078. Instead, the court held that "detention must be for a reasonable period and only if there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. at 1079. Citing *Zadvydas*, the *Nadarajah* court offered "a six month detention" period as a presumptively reasonable length of time, and further held that once the detained alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id*. at 1077.

The ICE took Ms. Biocini into custody on March 2, 2006. To date, she has been detained pending removal proceedings for almost two years. The Ninth Circuit Court granted Ms. Biocini's motion for stay of removal and the parties' joint motion to remand to the BIA. As a result, Ms. Biocini's length of detention is indefinite. Clearly, Ms. Biocini's detention exceeds the "brief period" of detention as suggested by the Supreme Court in *Demore*. Her detention also exceeds the "presumptively reasonable" length of six months as stated in the *Zadvydas* and *Nadarajah* holdings.

**C. Petitioner Is Very Likely To Prevail On Her Claim That Her Prolonged Detention Does Not Bear A "Reasonable Relation" To Her Removal**

The Supreme Court and the Ninth Circuit have both recently ruled that detention incident to removal must bear a "reasonable relation" to its purpose. *Demore*, 538 U.S. at 527; *Zadvydas*, 533 U.S. at 690; *Tijani*, 430 F.3d at 1249 (Tashima, J. concurring)(citing the Supreme Court in *Zadvydas*, 533 U.S. at 690); *see also Nadarajah*, 443 F.3d at 1078 ("[W]e conclude that the statues at issue permit detention only while removal remains reasonably foreseeable"). An

immigrant's detention is not "reasonably related" to removal if §1226(c)'s goal of preventing flight is "no longer practically attainable," due to the unlikelihood of the aliens' ultimate removal. *Zadvydas*, 533 U.S. at 690 ("[B]y definition the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best. . . . where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual [was] committed"); *Demore*, 538 U.S. at 527; *Tijani*, 430 F.3d at 1249 (Tashima, J. concurring); *see Ly*, 351 F.3d at 269-71. ("[A]lthough criminal aliens may be incarcerated pending removal, the time of incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal. . . . The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal proceedings"). Furthermore, detention incidental to removal is not "reasonably related" to its purpose when the length of detention is clearly "unreasonable" and it becomes "so egregious that it can no longer be said to be 'reasonably related' to an alien's removal." *Tijani*, 430 F.3d at 1249 (Tashima, J. concurring).

Ms. Biocini's detention is not "reasonably related" to its purpose for two primary reasons. First, §1236(c)'s goal of preventing flight is "no longer practically attainable" since the government is not likely to remove Ms. Biocini. Therefore, because Ms. Biocini's actual removal is not reasonably foreseeable, her detention is no longer reasonably related to its purpose. Second, Ms. Biocini's detention is not reasonably related to its purpose because the length of her detention is "unreasonable." The government has detained Ms. Biocini for almost two years. As asserted in Part A., Ms. Biocini's length of detention is not "brief," as required by the *Demore* holding, and exceeds the presumptively reasonably six month period of the *Zadvydas* and *Nadarajah* holdings. The Office of Immigration Litigation and Petitioner recently signed a joint motion to remand to the BIA, which was granted by the Ninth Circuit Court of Appeals. Thus, Ms. Biocini's removal is stayed pending a Board decision in the matter. As a result, the length of Biocini's detention is so egregious that it can no longer be "reasonably related" to her removal.

### D. Petitioner is Very Likely to Prevail on Her Claim that Her Prolonged Detention in the Absence of Adequate Procedures Violates the Immigration Statutes and the Due Process Clause

There can be no doubt that individual liberty is one of the most fundamental rights protected by the Constitution. *Zadvydas*, 533 U.S. at 678. There can also be no doubt that the Due Process Clause protects immigrants as well as citizens. See *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("The Fifth Amendment, as well as the Fourteenth Amendment, protects every [alien] from deprivation of life, liberty or property without due process of law"). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint--- lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. at 690. For this reason, detention must always be reasonable in relation to its purpose. Where civil detention serves an appropriate purpose, it must also be accompanied by adequate procedural safeguards. *Id.* at 691. As detention becomes prolonged, the deprivation of liberty at issue becomes greater, and correspondingly more rigorous procedures are required. *Id.* at 690-691.

In a recent Supreme Court case, *Demore v. Kim*, a Justice Kennedy concurrence read:

> "[D]ue process requires individualized procedures to ensure there is at least some merit to the Immigration and Naturalization Service's (INS) charge and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing…. If the Government cannot satisfy this minimal, threshold burden, then the permissibility of continued detention pending deportation proceedings turns solely upon the alien's ability to satisfy the ordinary bond procedures--namely, whether if released the alien would pose a risk of flight or a danger to the community….For similar reasons, since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."

*Demore*, 538 U.S. at 532.

A "reasonable" time period was outlined by the court using statistics by the Executive of Office for Immigration review which held 47 days to be the "average" length for removal proceedings or up to four months if the detained alien appeals to the Immigration Judge. *Demore* , 538 U.S. at 529. Petitioner, a lawful permanent resident alien since 1989 and a fifty-

12

two year old mother of a nineteen-year old boy, has been detained for nearly two years in civil detention, *pre removal* proceedings, six times the average length as outlined by the Supreme Court as being "reasonable."

In *Nadarajah*, the court ruled that immigration law demands that "detention must be for a reasonable period, and only if there is a significant likelihood of removal in the reasonably foreseeable future." *Nadarajah*, 443 F.3d at 1079. The court gave "a six month detention" as presumptively reasonable and furthermore held that once the detained alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Nadarajah*, 443 F.3d at 1077. In a similar case, *Tijani*, the respondent was detained for a 30 month period "without the possibility of release, based on nothing more than the fact that he may someday be removable," which the court ruled as "clearly a violation of his due process rights." *Tijani*, 430 F.3d at 1249. Furthermore, the Supreme Court said a lawful permanent resident alien could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified, since Due Process Clause prohibits arbitrary deprivations of liberty. *Zadvydas*, 533 U.S. at 684-86.

Ms. Biocini has sat in civil detention for nearly two years without a foreseeable proceeding afforded to her by DHS to contest her unreasonable detention and deprivation of liberty. As clearly articulated by the Supreme Court in *Demore*, "Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33.

As mentioned, "There can be no doubt that the Due Process Clause protects immigrants as well as citizens." *Tijani*, 430 F.3d at 1244 (citing *Mathews*, 426 U.S. at 77). As Justice Kennedy noted in his concurrence, there exists a point at which the length of detention becomes so egregious that it can no longer be said to be "reasonably related" to an alien's removal *Demore*, 538 U.S. at 532. Under the standards provided by the Supreme Court and the United

States Constitution's Due Process rights, Ms. Biocini requires an immediate bond hearing as to free her from this prolonged, arbitrary, and arduous detention imposed on her by the INS.

### E. Petitioners Prolonged Detention has caused Irreparable Harms and Continued Detention Threatens to Inflict Further Irreparable Injury.

Petitioner has been detained for almost two years at the Lerdo Pre-Trial Facility in Bakersfield, California, in immigration custody awaiting the outcome of her appeal. Each passing day in prolonged detention without the possibility of release pending the resolution of her appeal deprives Petitioner of her fundamental right of liberty as protected by the Constitution. *Zadvydas*, 533 U.S. 678; See *Mathews*, 426 U.S. at 77 ("The Fifth Amendment, as well as the Fourteenth Amendment, protects every [alien] from deprivation of life, liberty or property without due process of law").

Furthermore, Petitioner has begun suffering from anxiety, sleeplessness, and constipation as a result of her prolonged detention further exacerbated by her valid fear of physical harm, perhaps even death, at the hands of the Colombian cartel if she were deported. Petitioner is agonizing over constant stress, ailing emotional and psychiatric health, a broken family, and deprivation of her liberty pending resolution of her appeal. In addition, has been suffering from rectal and vaginal prolapse, which is a loosening of the internal tissue causing frequent displacements of organs and serious bleeding. Exhibit A. This condition had been so severe at times that emergency care was required. Exhibit A, Exhibit E. Twice doctors have recommended her to have surgery. The second recommendation labeled her case as "urgent." However, the Division of Immigration Health Services officially refused to fund such surgeries both times, stating lack of emergency as its rationale. Exhibit A, Exhibit F, Exhibit G.

Petitioner's son, Peter, has undergone tremendous strain and harm directly resulting from the prolonged detention of his mother. His severe depression and anxiety, although currently abetted, nonetheless linger and burden him due to his mother's absence. Furthermore, Petitioner's family, including her brother and sister, concede that Petitioner's detention has broken their family unit and family harmony.

The Petitioner has started seeing the psychiatrist on a monthly basis and must consume medication to sleep at nights.

### F. Balance of Hardships Tips Sharply in Petitioner's Favor

"The relative hardship to the parties" is the "critical element" in deciding at which point along the continuum an injunction is justified. A minimal showing on the merits is required when the balance of hardships tips so strongly toward the moving party. *Benda*, 584 F.2d at 315.

The government will suffer no hardship for releasing Petitioner during the adjudication of her litigation. The public interest is not being served by detaining Petitioner in immigration, pre-removal facilities for almost two years, because Petitioner is neither a danger to the community nor a flight risk. Petitioner has established strong family ties and roots in the United States as a lawful permanent resident for over nineteen years. She has raised her family here, including her one son, Peter, who unfortunately suffers severe emotional and psychological distress due to his mother's prolonged detention. Furthermore, Petitioner's brothers and sister and ex-husband all reside in California, thus establishing a strong tie and loyalty to her community. Petitioner has cooperated faithfully with the United States government and its imposed conditions both as an informant and previously when she was on supervised release.

Currently, Petitioner is suffering psychological stress in the form of anxiety, sleeplessness, stress, and constipation resulting from her prolonged detention in immigration custody. These ailments are exacerbating by the uncertainty regarding the length of her current detention, her eventual (if ever) release, and whether she will be removed to Colombia, where she will most likely face serious threats to her safety and well being.

Therefore, the government faces no hardship in allowing Petitioner to be released pending the resolution of her case. Petitioner's release will allow some semblance of unity and normalcy to develop with her family, especially her struggling son, Peter. Furthermore, release from prolonged detention would greatly curb her psychological, emotional, and physical ailments as well as grant the Petitioner her fundamental right of liberty.

### CONCLUSION

As a result, Petitioner has substantial, meritorious claims that her prolonged, almost two years of detention in pre-removal, immigration custody is unreasonable. Petitioner has more than satisfied the traditional requirements of granting a preliminary injunction. Furthermore,

Petitioner has established that granting a preliminary injunction for her release pending the outcome of her appeal in no way threatens or afflicts the government. Instead, continued detention deprives the Petitioner of her fundamental right to liberty as enshrined by the Constitution. Furthermore, the uncertainty regarding her detention, which currently has lasted for nearly two years, makes her detention unreasonable and violates her Due Process rights. Significantly, Petitioner's detention not only harms Petitioner's emotional and psychological health, but also directly contributes to her son's depression and anxiety. Granting the preliminary injunction, ultimately, allows the Petitioner to restore some normalcy to her family life, restore her emotional health and well being, and most importantly restore her fundamental right to liberty. The government has detained Ms. Biocini for almost two years while she challenges her removal proceedings – far beyond the presumptively reasonable six months completion of removal proceedings. Even if Ms. Biocini is not entitled to immediate release, she is at least entitled to a hearing at which the government must prove that her prolonged and on going detention is justified on the bases of factors such as danger to the community or flight risk.

Dated: February 4, 2008                                  Respectfully submitted,


By: _____
    Holly Cooper
    Attorney for Petitioner

## VERIFICATION

I, Ana Biocini, currently detained at the Lerdo County Pre-Trial Facility in Bakersfield, California, hereby declare under penalty of perjury of the laws of the State of California and the United States that the facts alleged in the foregoing Verified Petition for Writ of Habeas Corpus are, to the best of my knowledge, true and correct.

Executed this 30 day of JANUARY, 2008 in Bakersfield, California.

_____
Ana Biocini