HOLLY S. COOPER SBN 197626
U.C. DAVIS IMMIGRATION LAW CLINIC
University of California, Davis School of Law
One Shields Ave., TB-30
Davis, CA  95616-8821
Tel:  (530) 752-6942
Fax:  (530) 752-0822
hscooper@ucdavis.edu

Attorney for Respondent
ANA BIOCINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BIOCINI,<br>A 91 182 333, an individual,<br>　　　　Petitioner,<br><br>　　vs.<br><br>Michael Mukasey, in his official capacity as Attorney General of the United States; et al.,<br><br>　　　　Respondents. | Case No. C 08-0885 SI<br><br>**PETITIONER'S REPLY TO GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　April. 7, 2008<br>Time:　9:00 a.m.<br>Court:　10 |

## I. INTRODUCTION

Respondent the United States government ("Respondent") asks this Court to deny Petitioner Ana Biocini's ("Petitioner") motion for preliminary injunction. However, Respondent erroneously assumes that "[s]uch an order would disturb the status quo, rather than preserve it, and effectively provide Petitioner with all the relief she seeks from the Court through the vehicle of habeas corpus." Govt's Opposition, p. 1. Moreover, Respondent opposes the motion by implying that Petitioner will not succeed on any of the grievances that she ultimately wishes to be addressed by this Court via her writ of habeas corpus. However, Respondent's position is founded on neither the facts nor the applicable law in this case. Consequently, Respondent's opposition has no merit and Petitioner's motion should be granted.

## II. LEGAL ANALYSIS

### A. A Grant Of Petitioner's Motion For Preliminary Injunction Does Not Conclusively Provide Petitioner With All The Relief She Seeks

Respondent contends that Petitioner is trying, via the motion for preliminary injunction, to obtain all the ultimate reliefs that she seeks in her writ of habeas corpus. *See* Govt's Opposition, p. 1. However, the motion for preliminary injunction itself begins by stating that "Petitioner Ana Biocini moves this Court to issue a preliminary injunction to stay further detention in the custody of United States Immigration and Customs Enforcement ("ICE") pending a final resolution of her Petition for Writ of Habeas Corpus." Petitioner's Motion for Preliminary Injunction, p. 2. The same document ends by praying that "[e]ven if Ms. Biocini is not entitled to immediate release, she is at least entitled to a hearing at which the government must prove that her prolonged and on going detention is justified on the bases of factors such as danger to the community or flight risk." Id. p. 16. In other words, the entire motion speaks only to either the immediate release of Petitioner or granting her a hearing to ascertain the legality of her prolonged detention.

Contrast this with Petitioner's writ of habeas corpus, which states in its "Prayer for Relief" nine (9) different reliefs sought by the Petitioner. Admittedly, three (3) of these prayers

relate directly or indirectly to Petitioner's release.  However, the rest of the reliefs sought are varied and do not speak to the issues contained in the motion for preliminary injunction at all. For example, Petitioner, via the habeas writ, requests *inter alia* the Court to "[i]ssue a Permanent Injunction enjoining Petitioner's removal to Colombia", "transfer Petitioner to Yuba County Jail, in Marysville, California to ensure adequate attorney access", and "permit law students to have access to Petitioner in detention in Lerdo Pretrial Facility."  Complaint and Petition For Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, p. 14.

As is evident, Petitioner's request to be released pending the outcome of these prayers of relief is largely independent of the latter.  Put differently, Petitioner, via the motion for preliminary injunction, wishes only to attain her liberty and nothing else.

### B. Contrary To The Respondent's Implication, Petitioner Has A High Probability Of Success On The Merits Of Her Case

To obtain a preliminary injunction, the petitioner must demonstrate "either 1) a combination of probable success on the merits and possibility of irreparable injury or 2) serious questions are raised and the balance of hardships tips sharply in [her] favor." *Barahona – Gomez v. Reno,* 167 F.3d 1228, 1234 (9th Cir. 1999); *Maharaj v. Ashcroft,* 295 F.3d 963, 966 (9th Cir. 2006); *Nadarajah v. Gonzales*, 443 F.3d at 1083, 1084 (9th Cir. 2006). "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Benda v. Grand Lodge of Int'l Asso. of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978); *Nadarajah*, 443 F.3d at 1083-1084.

Respondent has alluded in its opposition that Petitioner's motion for preliminary injunction should be denied because she is unlikely to prevail upon the merits of her claim. Govt's Opposition, p. 3.  Respondent makes this assertion primarily by referencing the Court to Respondent's return on Petitioner's writ of habeas corpus, which makes seven different objections to Petitioner's claims.  They concern 1) this Court's power to enjoin removal orders, 2) the legality of Petitioner's detention, 3) the likelihood Petitioner's removal, 4) the

reasonableness of the length of Petitioner's prolonged detention, 5) this Court's power to entertain Petitioner's "medical claims" via a writ of habeas corpus, 6) this Court's power to grant bond, and 7) this Court's power to entertain a state-created danger theory. However, for the following reasons, Respondent's return is unpersuasive.

> **1) Petitioner's Detention Is No Longer Lawful Because It Has Exceeded The Appropriate Length As Mandated By The Supreme Court and Ninth Circuit Case Law**

Respondent contends that part of the reason Petitioner's detention is lawful is because "Petitioner was convicted of violating 21 U.S.C. § 846, conspiracy to distribute cocaine. [] Thus, not only is she subject to mandatory detention as an alien convicted of a drug-related offense[,] but she is also subject to mandatory detention as an alien convicted of an aggravated felony[.]" Govt's Return, p. 5. However, Petitioner does not contest this issue at all. What Petitioner does contest is the fact that her detention, while lawful at its onset, no longer comports with the guidelines mandated by the Supreme Court and the Ninth Circuit.

In *Demore v. Kim*, 538 U.S. 510, 513 (2003), the Supreme Court held that "[C]ongress … may require … respondent be detained for the *brief period necessary* for their removal proceedings." (Emphasis added). While not explicitly defining "brief period," the Court nonetheless stated that the majority of pre-removal detentions last less than the presumptively reasonable six months offered in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id*. at 529. The Court cited the Executive of Office for Immigration's statistics, which provided that the average time for §1226(c) removal proceedings lasts forty-seven days, and may take up to four more months if the detained alien appeals to the BIA. *Id.* Therefore, arguably, a "brief period" of detention is "roughly a month and a half" when immigrants are detained under §1226(c), and "about five months" in cases where the immigrant chooses to appeal. *Id.* at 530.

The Ninth Circuit has echoed the Supreme Court. In *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), the Ninth Circuit held that that §1226(c) requires the expedited removal of criminal aliens and "[t]wo years and four months of process is not expeditious." *Id*. In *Nadarajah v. Gonzalez*, 443 F.3d 1069 (9th Cir. 2006), citing *Zadvydas*, the Ninth Circuit again

Petitioner's Reply C08-0885 SI                                                                                                              4

held "a six month detention" period as a presumptively reasonable length of time, and further held that once the detained alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id*. at 1077.

Petitioner has been in immigration detention, awaiting the outcome of her immigration proceedings, since March 2, 2006. That is, at the time of this response, almost two years and one month, or, seven hundred and fifty-five days. The length of Petitioner's detention has exceeded even the most lenient interpretation of the guidelines set out by the Supreme Court and Ninth Circuit precedents. It is four times longer than the six months presumption under *Zadvydas* and *Demore*, eerily approaches the two years and four months of *Tijani*, and Petitioner has provided good reasons to believe that Respondent has no significant likelihood of removing her in the reasonably foreseeable future.

Again, Petitioner does not contest the legality her detention at its commencement. What the Petitioner prays, is that this Court enjoin her detention, which has long exceeded the legally permissible limit.

Respondent also alleges that Petitioner herself is largely responsibly for prolonging her detention. Respondent states Petitioner requested two continuances at the immigration court. Govt's Return Exh. 3; Habeas Petition, Exh. L, pp. 1460-63. However, both of these requests pre-date Petitioner's immigration custody by approximately six months. Since Petitioner's last individual hearing at the immigration court was on February 15, 2006, Habeas Petition, Exh. L, pp. 200-222, and did not commence immigration detention under March 2, 2006, these two continuances' impact in delaying Petitioner's detention was therefore minimal.

Respondent also alleges that Petitioner made three requests to extend briefing schedules during administrative and Ninth Circuit appellate proceedings. On June 23, 2006, Petitioner requested an extension on her BIA brief from June 27, 2006 to July 18, 2006. Habeas Petition, Exh. L, p.41[1]. This is approximately nineteen days. On December 26, 2006, Petitioner also

---

[1] Respondent cited Habeas Petition, Exh. L, p. 50, which is incorrect.

Petitioner's Reply C08-0885 SI                                                                 5

requested an extension to file the response to motion to dismiss and reply to Respondent's opposition to motion for stay, which were both filed on January 22, 2007. Govt's Return Exh. 6. Lastly on May 25, 2007, Petitioner made an oral fourteen-day extension of Ninth Circuit opening brief. Govt's Return Exh. 6. All in all, Petitioner made a nineteen-day request, a twenty-seven day request, and a fourteen-day request, totaling sixty days, or about two months, of extensions during the appellate proceedings. On the other hand, when the Petitioner made a short two-week extension for her opening brief at the Ninth Circuit, Respondent filed and was granted a fourth-five day extension on their reply brief. Govt's Return Exh. 6, dated August 2, 2007.

In short, Respondent's allegation that Petitioner practiced dilatory tactics and therefore is responsible for her prolonged detention is without merit. While in immigration custody, Petitioner extended her proceedings by a mere two months. That still leaves her in ICE custody for approximately seven hundred days, or nearly two years, far exceeding the presumptive six months set out in *Demore* and *Zadvydas*.

### 2) Petitioner Is Unlikely To Be Removed Because She Has Meritorious Claims Under Both Withholding Of Removal And The State-Created Danger Doctrine

Respondent also contends that Petitioner is likely to be removed, and thus she is unlikely to succeed on the merits of her case. Respondent erroneously asserts that Petitioner will not qualify for withholding of removal because Petitioner will not be able to prove that it is more likely than not that she will be persecuted based upon her membership in a particular social group. For its reasoning, Respondent cites *Arteaga v. Mukasey*, 511 F.3d 940, 945-46 (9th Cir. 2007), which stands for the proposition that Congress never contemplated offering protection for individuals facing persecution who are also members of violent gangs who commit assault and traffic drugs.

However, *Arteaga* is at best inapposite to Petitioner's case. The basis of Petitioner's withholding of removal claim is that she is a member of the social group which is comprised of informants who assist the government in their prosecution of crimes. The citation to *Arteaga* is

Petitioner's Reply C08-0885 SI                                                                                          6

further off the mark because Petitioner never claimed to be a gang member and therefore cannot possibly claim membership in such social groups even if they were recognized as such.

Respondent further claims that Petitioner is likely to be removed and therefore not meritorious of release by distinguishing Petitioner's case with *Nadarajah v. Gonzalez*. Respondent asserts that petitioner there had a higher probability of success on the merits because he has "not been charged with any crime, and … has won relief at every administrative level." 443 F.3d 1069, 1081 (9th Cir. 2006).

However, merely having been convicted of a criminal offense is not dispositive at all of the eventual outcome of an application for withholding of removal. Furthermore, Petitioner has obtained a remand from the Ninth Circuit back to the Board of Immigration Appeals, which establishes her as the "prevailing party" thus far in her immigration proceedings. *Rueda-Menicucci v. INS*, 132 F.3d 493, 498 (9th Cir. 1997) ("Because petitioners obtained [a remand to the BIA], they are prevailing parties … and, thus, entitled to attorney's fees.)

In sum, Petitioner has a solid claim to withholding of removal that is both well structured and reasoned. Respondent's assertion that Petitioner does not have a meritorious withholding of removal claim is unfounded.

### 3) This Court Need Not Entertain Petitioner's "Medical Claims" Because Petitioner Makes No Such Claims

Respondent asserts that Petitioner will not succeed on the merits because claims of inadequate medical care are not cognizable in habeas proceedings. However, Petitioner does not make medical claims in her habeas petition. In fact, the word "medical" never appears once in the writ of habeas corpus itself. References to medical conditions do appear in Petitioner's motion for preliminary injunction and memorandum for points and authorities. However, these references are not *per se* medical claims. They are part-and-parcel with Petitioner's preliminary injunction claim, namely, she is and will continue to suffer irreparable harm if her detention is not enjoined. The claims to her medical conditions are not in and of themselves a separate claim; they merely illustrate the "irreparable harm" that Petitioner is suffering as a result of her prolonged detention. The Ninth Circuit has itself taken health into account when evaluating

whether the balance of hardship favors the petitioner. *Nadarajah*, 443 F.3d at 1084 ("The balance of hardships also favor releasing Nadarajah. There is undisputed evidence in the record that his health is deteriorating, a deterioration that is only exacerbated by continuing detention. Therefore, we grant the motion for release, subject to conditions to be set by ICE").

### 4) This Court Does Have The Power To Enjoin Removal Orders That Are Violative Of A Petitioner's Constitutional Rights

Respondent claims that this Court does not have power to enjoin Petitioner's removal order because Petitioner's state-created danger claim challenges removal, and under the REAL ID Act this Court lacks jurisdiction to entertain habeas writs that contest removal orders.

However, in *Wang v. Reno*, 81 F.3d 808 (9th Cir. 1996), the seminal case on the state-created danger theory, a noncitizen from China was brought to the United States to testify in a drug conspiracy case. *Id.* at 812. Wang alleged that returning him to China would violate his Fifth Amendment due process rights. *Id.* The Ninth Circuit determined that pursuant to 28 U.S.C. § 1331, federal courts have jurisdiction over constitutional claims. *Id.* Because Wang's due process claim "does not implicate the INA at all," the court concluded that the district court had jurisdiction over the claim even though Wang had not exhausted his administrative remedies with respect to his excludability. *Id*. at 814. The court explained that "the INS is not empowered to grant effective relief for the governmental misconduct at issue: it lacks institutional competence to resolve the constitutional issue." *Id*. at 816. The passing of the REAL ID Act has not affected this analysis, for the Ninth Circuit has stated that it will allow the District Court to conduct the appropriate fact-finding regarding a state-created danger theory, "if (1) the petitioner's allegations, if proven, would constitute a colorable constitutional claim, and (2) the state court trier of fact has not reliably found the relevant facts after a full and fair hearing." *Morgan v. Gonzales*, 495 F.3d 1084, 1090 (9th Cir. 2007).

Here, Petitioner has raised a colorable constitutional claim stemming out of her assistance to the government and the potential danger of being returned to Colombia as a government informant. Petitioner has also not had a chance to have a full and fair hearing on her state-

Petitioner's Reply C08-0885 SI                                                                                                            8

created danger claim. Therefore, this Court does have jurisdictional to enjoin Petitioner's removal order under the state-created doctrine[2].

### 5) This Court Has The Power To Grant Bond And Release Petitioner

Respondent also contends that this Court does not have the power to grand bond and release petitioner. As authority, Respondent cites to 8 U.S.C. § 1226(e). However, Federal Rules of Appellate Procedure ("FRAP") Rule 23 "establishes the authority of the federal courts to release both successful and unsuccessful habeas petitioners pending appeal." *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987). The Ninth Circuit recently stated that the "government's argument that the court 'should not consider, let alone grant, extraordinary relief by motion where entitlement *vel non* to release is the very issue on appeal' is baffling: such a release is precisely what [Rule 23] contemplates." *Nadarajah*, 443 F.3d at 1083 n.5.

Furthermore, Respondent cites *Nadarajah* as authority on the proposition that even if the Court were to determine that a writ of habeas corpus should issue, any release would be "subject to terms and conditions to be set by the appropriate delegate of the Attorney General," and not subject to terms set by the Court. *Id*. at 1084. However, the entire sentence actually reads, "*[w]e grant [Nadarajah's] motion for immediate release*, subject to terms and conditions to be set by the appropriate delegate of the Attorney General." *Id*. (emphasis added). Thus, upon closer scrutiny, it is patent that the "terms and conditions" reference the details of the release rather than the actual decision on whether the Petitioner should be released at all.

---

[2] Respondent's comment that Petitioner's state-created danger claim is "absurd" because "the Government did not ask Petitioner to traffic in drugs," and that "none of the facts described in *Wang* … are present in the instant case," misses the key facts of this case entirely. The government certainly did not "ask Petitioner to traffic in drugs." But the government also did not ask Wang to associate himself with Asian drug cartels, but in both instances the government engaged Wang and Petitioner to assist the government to Wang and Petitioner's potential detriments. In *Wang*, the government knew that putting Wang on the stand will force him to either lie or tell the truth and suffer life-threatening consequences once he is returned to China. Here, Petitioner's assistance was requested even though the government should have known that Petitioner's well-being is severely compromised if she's deported to Colombia after having served as a government informant. Consequently, because Wang's deportation was permanently enjoined, Petitioner respectfully requests the same relief for herself.

In short, this Court's power to set bond and release Petitioner pending the outcome of a habeas petition has been judicially interpreted to trump 8 U.S.C. § 1226(e).

### VII. CONCLUSION

Petitioner Ana Biocini has now been in immigration detention for over two full years, awaiting the outcome of her case. The length of her detention has far exceeded the duration provided by the Supreme Court and the Ninth Circuit. Petitioner respectfully requests an order from this Court to preliminary enjoin her detention and release her immediately, or in the alternative, provide her with a hearing on the legality of her continued detention by ICE. Petitioner has shown that she has a high probability of success on the merits of her habeas petition, and she will suffer irreparable harm if her detention is prolonged further. Petitioner has also demonstrated that she raises a serious issue of law in her state-created danger claim, and the balance of hardship tips decidedly in her favor. Petitioner thus has fulfilled the traditional criteria for a grant of preliminary injunction.

Respondent has erroneously assumed that granting Petitioner a preliminary injunction would render Petitioner all her ultimate claims. This is erroneous because release from detention is merely one of her several claims. Moreover, Respondent opposes the present motion by implying that Petitioner will not succeed on any of the grievances that she ultimately wishes to be addressed by this Court via her writ of habeas corpus. However, as the preceding paragraphs have shown, Respondent's position is founded on neither the facts nor the applicable law in this case.

Consequently, Petitioner's motion for preliminary injunction should be granted.

Dated: March 27, 2008

Respectfully submitted,

/s/

Holly S. Cooper

Counsel for Petitioner

Petitioner's Reply C08-0885 SI