HOLLY S. COOPER SBN 197626
U.C. DAVIS IMMIGRATION LAW CLINIC
University of California, Davis School of Law
One Shields Ave., TB-30
Davis, CA 95616-8821
Tel: (530) 752-6942
Fax: (530) 752-0822
hscooper@ucdavis.edu

Attorney for Petitioner
ANA BIOCINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BIOCINI,<br>A 91 182 333, an individual,<br>　　　　Petitioner,<br><br>　　vs.<br><br>Michael Mukasey, in his official capacity as Attorney General of the United States; et al.,<br><br>　　　　Respondents. | Case No. C 08-0885 SI<br><br>**PETITIONER'S TRAVERSE** |

# I. INTRODUCTION

Respondent, the United States government ("Respondent"), asks this Court to deny Petitioner Ana Biocini's ("Petitioner") writ of habeas corpus. However, Respondent's position is founded on neither the facts nor the applicable law in this case. Consequently, Respondent's opposition has no merit and Petitioner's petition for writ of habeas corpus and motion for permanent injunction should be granted.

# II. LEGAL ANALYSIS

### A. Petitioner's Detention Is No Longer Constitutional Because It Has Exceeded The Appropriate Length As Mandated By The Supreme Court and Ninth Circuit Case Law

Petitioner, Ana Biocini, hereby petitions this Court for a writ of habeas corpus to review the lawfulness of her detention of over two years by Immigration and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security.[1]

Respondent contends that Petitioner's detention is lawful because "Petitioner was convicted of violating 21 U.S.C. § 846, conspiracy to distribute cocaine." Govt's Return, p. 5. Thus, not only is she subject to mandatory detention as an alien convicted of a drug-related offense[,] but she is also subject to mandatory detention as an alien convicted of an aggravated felony[.]" *Id*. However, Petitioner does not contest this issue. Petitioner contests the length of her detention. While her detention was lawful at its onset, the detention beyond the presumptively reasonable six months fails to comport with the guidelines mandated by the Supreme Court and the Ninth Circuit.

In *Demore v. Kim*, 538 U.S. 510, 513 (2003), the Supreme Court held that "[C]ongress … may require … respondent be detained for the *brief period necessary* for their removal proceedings." (Emphasis added). While not explicitly defining "brief period," the court nonetheless stated that the majority of pre-removal detentions last less than the presumptively

---

[1] Although ICE has agreed to release Ms. Biocini from Lerdo Pre-Trial Facility in Bakersfield on April 11, 2008, the exact details and conditions of her release are unclear at the time of this filing.

Petitioner's Traverse C08-0885 SI

2

reasonable six months offered in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id*. at 529. The Court cited the Executive of Office for Immigration Review's statistics, which provided that the average time for §1226(c) removal proceedings lasts forty-seven days, and may take up to four more months if the detained alien appeals to the BIA. *Id.* Therefore, arguably, a "brief period" of detention is "roughly a month and a half," when immigrants are detained under §1226(c), and "about five months" in cases where the immigrant chooses to appeal. *Id.* at 530.

The Ninth Circuit has echoed the Supreme Court decision. In *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), the Ninth Circuit held that that §1226(c) requires the expedited removal of criminal aliens and "[t]wo years and four months of process is not expeditious." *Id*. In *Nadarajah v. Gonzalez*, 443 F.3d 1069 (9th Cir. 2006), citing *Zadvydas*, the Ninth Circuit again held "a six month detention" period as a presumptively reasonable length of time. *Id*. at 1077.

Petitioner has been in immigration detention, awaiting the outcome of her immigration proceedings, since March 2, 2006. That is over two years and one month. The length of Petitioner's detention has exceeded even the most lenient interpretation of the guidelines set out by the Supreme Court and Ninth Circuit precedents. It is four times longer than the six months presumption under *Zadvydas* and *Demore*, and approaches the two years and four months of *Tijani*.

**B. Petitioner's Is Not Responsible for Her Prolonged Detention**

Respondent alleges that Petitioner herself is largely responsibly for prolonging her detention. Respondent states Petitioner requested two continuances at the immigration court. Govt's Return Exh. 3; Habeas Petition, Exh. L, pp. 1460-63. However, both of these requests pre-date Petitioner's immigration custody by approximately six months. Since Petitioner's last individual hearing at the immigration court was on February 15, 2006, Habeas Petition, Exh. L, pp. 200-222, and did not commence immigration detention under March 2, 2006, these two continuances' impact in delaying Petitioner's detention was therefore minimal.

Respondent also alleges that Petitioner made three requests to extend briefing schedules during administrative and Ninth Circuit appellate proceedings. On June 23, 2006, Petitioner requested an extension on her BIA brief from June 27, 2006 to July 18, 2006. Habeas Petition, Exh. L, p.41. This is approximately nineteen days. On December 26, 2006, Petitioner also requested an extension to file the response to motion to dismiss and reply to Respondent's opposition to motion for stay, which were both filed on January 22, 2007. Govt's Return Exh. 6. Lastly on May 25, 2007, Petitioner made an oral fourteen-day extension of Ninth Circuit opening brief. Govt's Return Exh. 6. All in all, Petitioner made a nineteen-day request, a twenty-seven day request, and a fourteen-day request, totaling sixty days, or about two months, of extensions during the appellate proceedings. On the other hand, when the Petitioner made a short two-week extension for her opening brief at the Ninth Circuit, Respondent filed and was granted a fourth-five day extension on their reply brief. Govt's Return Exh. 6, dated August 2, 2007.

In short, Respondent's allegation that Petitioner is responsible for her prolonged detention is without merit. While in immigration custody, Petitioner extended her proceedings by a mere two months. That still leaves Ms. Biocini in ICE custody for nearly two years, which far exceeds the presumptive six months set out in *Demore* and *Zadvydas*.

### C. Petitioner Is Not Likely To Be Removed Because She Has Strong Meritorious Claims Under Withholding Of Removal, Convention Against Torture, and the State-Created Danger Doctrine

Justice Kennedy's concurrence in *Demore* states that "the ultimate purpose behind the detention is premised upon the alien's deportability." *Demore*, 538 U.S. at 531. Petitioner reasonably believes that it is unlikely to remove her in the reasonably foreseeable future due to the strength of her withholding of removal claim, Convention Against Torture claim, and a claim under the state created danger doctrine.

Respondent erroneously asserts that Petitioner will not qualify for withholding of removal. For support, Respondent cites *Arteaga v. Mukasey*, 511 F.3d 940, 945-46 (9th Cir. 2007), which stands for the proposition that Congress never contemplated offering protection for

individuals that fall in "antisocial" groups, those facing persecution who are also members of violent gangs who commit assault and traffic drugs.

However, *Arteaga* is at best inapposite to Petitioner's case. The basis of Petitioner's withholding of removal claim is that she is a member of the social group, which is comprised of Colombian women who voluntary become United States drug informants with numerous connections in the Colombian drug cartels. She separated herself and voluntarily relinquished confidential information about the drug cartels in Colombia to assist the United States. While "[d]isassociating oneself from a group does not automatically put one in another group as group is meant in the law," Ms. Biocini has placed herself in another group by taking clear, affirmative action of volunteering information and placing herself and her family in danger. *Id*. at 946. With various United States officials, she tried to prevent the violent behavior that the court was concerned about in *Artega v. Mukasey* by providing over forty names of high officials and detailing the secrets of the illegal activity. Unlike *Artega*, Ms. Biocini is not asking "to create a sanctuary for universal outlaws;" instead, Ms. Biocini is asking for a humanitarian approach taken to informants who voluntarily relinquish information and assist in reducing criminal behavior. *Id.* Additionally, *Arteaga* is further inapplicable for Petitioner because Ms. Biocini never claimed to be a gang member and therefore cannot possibly claim membership in such social groups, even if they were recognized as such.

Additionally, Ms. Biocini qualifies for withholding of removal under an imputed political opinion. The Colombian cartel, which is deeply intertwined with the Colombian government, imputes a political opinion on Ms. Biocini because of her perceived solidarity with the United States from her status as a drug informant. Based on either account of social group or imputed political opinion, Ms. Biocini will be more likely than not to be killed by agents of the Colombian drug cartels if she returns to Colombia. In summary, Petitioner has a solid claim to withholding of removal that is both well structured and reasoned.

Respondent further claims that Petitioner is likely to be removed and therefore not meritorious of release by distinguishing Petitioner's case with *Nadarajah v. Gonzalez*. Respondent asserts that petitioner there had a higher probability of success on the merits because

he has "not been charged with any crime, and … has won relief at every administrative level." *Nadarajah*, 443 F.3d at 1081.

However, merely having been convicted of a criminal offense is not dispositive at all of the eventual outcome of an application for withholding of removal. Furthermore, Petitioner has obtained a remand from the Ninth Circuit back to the Board of Immigration Appeals, which establishes her as the "prevailing party" in her immigration proceedings. *Rueda-Menicucci v. INS*, 132 F.3d 493, 498 (9th Cir. 1997) ("Because petitioners obtained [a remand to the BIA], they are prevailing parties … and, thus, entitled to attorney's fees"). Therefore, Respondent's assertion that Petitioner has not prevailed at any judicial level is unfounded.

Respondent also fails to mention Ms. Biocini's meritorious claim under Article 3 of the Convention Against Torture. Under Article 3 of the Convention Against Torture, it is forbidden to remove a person to a county "if it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)2. The burden of proof only requires a mere greater than fifty percent of being tortured. *Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004). Additionally, to qualify under Convention Against Torture, petitioner must demonstrate that the official is aware of the third party's torturous activity and does nothing to intervene or prevent it. *Zheng v. Ashcroft,* 332 F.3d 1186, 1188 (9th Cir. 2003). The Colombian government repeatedly breaches its legal duty when, by its own corruption, fails to protect those targeted by the drug cartels and paramilitary grounds. Therefore, under Article 3 of the Convention Against Torture, Ms. Biocini has a meritorious claim, making removal unlikely in the foreseeable future.

The Ninth Circuit held in *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1077 (9th Cir. 2006), that once the detained alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Here, the government has failed to properly respond with sufficient evidence. Therefore, when the detention is indefinite and exceeds the presumptively reasonable six month period and the likelihood of removal is not reasonably foreseeable, the detention is not constitutionally permissible. *Demore*, 538 U.S. at 529;

Petitioner's Traverse C08-0885 SI

6

1  *Nadarajah,* 443 F.3d at 1078; *Tijani*, 430 F.3d at 1242; *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2004).

Therefore, Petitioner respectfully asks this Court to grant a writ of habeas corpus.

### D. This Court Has The Power To Grant Bond And Release Petitioner

Respondent also contends that this Court does not have the power to grand bond and release petitioner. As authority, Respondent cites to 8 U.S.C. § 1226(e). However, Federal Rules of Appellate Procedure ("FRAP") Rule 23 "establishes the authority of the federal courts to release both successful and unsuccessful habeas petitioners pending appeal." *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987). The Ninth Circuit recently stated that the "government's argument that 'this Court should not consider, let alone grant, extraordinary relief by motion where entitlement *vel non* to release is the very issue on appeal,' is baffling: such a release is precisely what [Rule 23] contemplates." *Nadarajah*, 443 F.3d at 1083 n.5.

Furthermore, Respondent cites *Nadarajah* as authority on the proposition that even if the Court were to determine that a writ of habeas corpus should issue, any release would be "subject to terms and conditions to be set by the appropriate delegate of the Attorney General," and not subject to terms set by the Court. *Id*. at 1084. However, the entire sentence actually reads, "*[w]e grant [Nadarajah's] motion for immediate release*, subject to terms and conditions to be set by the appropriate delegate of the Attorney General." *Id*. (emphasis added). Thus, upon closer scrutiny, it is patent that the "terms and conditions" reference the details of the release rather than the actual decision on whether the Petitioner should be released at all.

In short, this Court's power to set bond and release Petitioner pending the outcome of a habeas petition has been judicially interpreted to trump 8 U.S.C. § 1226(e).

### E. The Court Has Jurisdiction Over Petitioner's State-Created Danger Claim

**(1) The Reasonable Interpretation of 8 U.S.C. § 1252(b)(9) Does Not Prohibit This Court from Asserting Jurisdiction Over a Motion for Permanent Injunction and Declaratory Relief Where The Circuit Court May Not Engage in Fact Finding**

1    This action arises under the Constitution, and the Immigration & Nationality Act of 1952,
2  as amended (the "INA"), 8 U.S.C. §§ 1101 et seq.  This Court has habeas corpus jurisdiction
3  pursuant to Art I § 9, cl. 2 of the United States Constitution (the "Suspension Clause"); 28 U.S.C.
4  § 2241 et seq.; and the common law.  This Court may also exercise jurisdiction pursuant to 28
5  U.S.C. § 1331, and may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201
6  et seq., and the All Writs Act, 28 U.S.C. § 1651.
7    Congress enacted the Real ID Act in 2005, eliminating district court habeas jurisdiction
8  over removal orders and granting the courts of appeals the exclusive jurisdiction to review such
9  challenges.  *Rafaelano v. Wilson*, 471 F.3d 1091, 1094 (9th Cir. 2006), 8 U.S.C. § 1252(b)(9)
10 (amended by REAL ID Act § 106(a)(2)).  The amendment states, "[j]udicial review of all
11 questions of law and fact, including interpretation and application of constitutional and statutory
12 provisions, arising from any action taken or proceeding brought to remove an alien from the
13 United States under this title shall be available only in judicial review of a final order under this
14 section." 8 U.S.C. §1252(b)(9).
15   Here, Petitioner contends that she is seeking an injunction or declaration prohibiting her
16 removal to Colombia and may do so whether or not immigration proceedings have even been
17 decided.  *Wang v. Reno*, 81 F.3d 808, 812; 814 (9th Cir. 1996) (allowing Wang to pursue
18 injunctive relief two days after being placed in exclusion proceedings and not requiring
19 exhaustion).  Petitioner contends that to file a motion for preliminary injunction and declaratory
20 relief in the circuit court of appeals in the first instance would defeat the traditional roles of the
21 district and circuit courts and Real ID Act cannot supersede the courts' mandates.
22   In addition, this Court has jurisdiction over Ms. Biocini's constitutional due process
23 claim because the Ninth Circuit Court of Appeals is not a fact finding court, and would therefore
24 be unable to conduct the necessary determinations of fact.  *INS v. Orlando Ventura,* 537 U.S 12,
25 16 (2002).  In *Rafaelano v. Wilson*, the Ninth Circuit recognized that the passage of the Real ID
26 Act created an unusual situation where the Court could not "review the decision of the district
27 court and yet [had] no BIA decision to review nor any administrative record regarding the
28 relevant factual issue." *Rafaelano*, 471 F.3d at 1096. *Rafaelano* involved an immigrant who

challenged her removal as a violation of due process. *Id.* at 1097.  The Court determined that it could not resolve the issues presented because there were certain determinations of fact that had not been made. *Id.* at 1098.  Petitioner had originally filed her habeas petition in district court and it was on appeal at the time the Real ID Act was passed, thus the appeal was converted into a timely filed petition for review with the Ninth Circuit. *Id*. at 1094.  Under 8 U.S.C. 1252(b)(4)(A) "the district court record and proceedings are treated as non-existent." *Id*. at 1097.  Therefore, the Court remanded the case to the BIA to permit the agency to conduct the necessary fact finding even though the case had never been before the Board. *Id*. at 1098.

Where there are essential disputed factual issues, the only constitutionally adequate remedy is a "full and fair hearing of [the] claims, and a reasonable opportunity [for the alien] to present evidence on his behalf." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006).  Although, *Morgan v. Gonzalez*, 495 F.3d 1084 (9th Cir. 2007) did permit the circuit court to remand to the district court for factual determination, the court in *Morgan* did not decide the issue of jurisdiction over injunctive relief when filed before the district court.

Section 1252(b)(9) should not, however, require that circuit courts become the gatekeepers on claims which should be proper before the district court.  The Respondents, however, advocate that even where fact finding is necessary, the circuit courts may review the motion for preliminary injunction for adequacy and then remand to the district court for further review.  However, such a circuitous route for review could not be what Congress intended when it sought to streamline review to the circuit courts of appeal through the Real ID Act.  Further, Congress could not have intended that this kind of case be taken up in the first instance at the circuit court without any record because those courts do not perform fact finding.  Thus, this Court must have jurisdiction in order to do the fact finding necessary regarding the "state created danger" claim prior to the circuit court hearing the case.

**(2) Petitioner's Claims Under The Fifth Amendment's State Created Danger Doctrine Could Not Have Been Addressed At The Administrative Level and 8 U.S.C. §1252(b)(9) Was Only Intended To Limit Review Over Claims Which Could Have Been Addressed Or Litigated At The Administrative Level**

A reasonable interpretation of 8 U.S.C. §1252(b)(9) is that it only limits jurisdiction over claims that could have been litigated at the administrative level. To interpret §1252(b)(9) as funneling all claims (including Federal Tort Claims) to the circuit court of appeals would be illogical.

Here, the statutory design of the INA does not address or remedy claims arising from the deliberate disregard of the due process rights of a noncitizen who has provided substantial assistance to the Government in a criminal trial. *Wang,* 81 F.3d at 815. Because Ms. Biocini's substantive due process rights are not implicated by the INA and cannot be reviewed by an Immigration Judge or the BIA, judicial review of these rights cannot be restricted by the Real ID Act, just as tort claims could not be restricted. Congress intended for decisions by the BIA to be appealed to the circuit courts, but did not intend for cases such as this one to be bootstrapped. In bringing this habeas petition, Ms. Biocini is not challenging her order of removal, she is seeking a permanent injunction preventing her removal to Colombia. Moreover, Ms. Biocini is not challenging the validity of the removal order, but whether the Government can execute that order at all.

Furthermore, the REAL ID Act did not intend to affect permanent injunctions such as this one. There is no INA relief analogous to a permanent injunction. The grant of a permanent injunction is a distinct form of relief from a grant of withholding of removal or a grant of relief pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"). To obtain withholding of removal, an applicant must establish a "clear probability" of persecution on account of one of the protected grounds. It must be more likely than not that a noncitizen would be subject to persecution if returned to his country of origin. *See Matter of Tobosco-Alfonso,* 20 I. & N. Dec 819 (citing *INS v. Stevic,* 467 U.S. 407 (1984)). Convention Against Torture bars signatory states from removing anyone to a country where there are substantial grounds to believe that he or she would be in danger of being subjected to torture in that country. 8 C.F.R. §1208.16(c)(2). Under Convention Against Torture, a person qualifies for relief if "it is more

likely than not that he or she will be tortured if removed to the proposed country of removal." 8 C.F.R. §1208.16(c)(2).

On the other hand, injunctions should be granted where the petitioner either demonstrates a probability of success on the merits and the possibility of irreparable injury, or raises serious legal questions and the balance of hardships tips sharply in the petitioner's favor. *See Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998). To qualify for an injunction, Ms. Biocini must demonstrate that she will possibly suffer irreparable injury if she is returned to Colombia, due to her cooperation with the U.S. government as an informant against Colombian drug cartels, which is an easier standard for Ms. Biocini to meet.

Moreover, the standard for termination of withholding of removal or withholding under Convention Against Torture is much lower than that of the standard to modify or vacate a permanent injunction. A grant of withholding may be revoked if an asylum officer determines, following an interview, that due to fundamental changes in circumstances, an alien's life or freedom would no longer be threatened should he or she be returned to their home county. 8 C.F.R. § 208(b)(1). There is essentially no limit to when the service may file a motion to consider whether deferral of removal under Convention Against Torture should be terminated. 8 C.F.R. § 208.17(d)(1). Deferral of removal under Convention Against Torture will be terminated if an immigration judge determines that there is no longer a likelihood of torture in the country to which removal has been deferred. 8 C.F.R. § 208.17(b)(1). The Service could move to reopen immigration proceedings at any time, so long as it presents evidence that was not presented at a previous hearing and the burden is on the noncitizen. 8 C.F.R. § 208.17(d)(1, 3).

A motion to modify or vacate a permanent injunction is governed by a stricter standard. *Wang,* 81 F.3d at 815 n.11. A trial court has inherent power to modify or vacate a permanent injunction if there has been a change in the facts upon which the injunction rests. *Sontag Chain Stores Co. v. Superior Court*, 18 Cal.2d 92, 95 (1941). A court may modify or vacate an injunction "[w]hen it can be shown that circumstances have so changed that an injunction is no longer necessary or desirable." *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.,* 65 Cal. App. 3d 121, 130 (1976). The "court has power to amend [the injunction]

in the interest of providing justice for all parties in interest." *Id.* However, unlike revoking withholding of removal, where Ms. Biocini would bear the burden of showing that she will not be tortured, the movant bears the burden of proof on a motion to dissolve an injunction. 8 C.F.R. § 12.08.24.b(1 - 4). Thus, in order to modify an injunction in Ms. Biocini's case, the Service would need to show that conditions have changed substantially in Colombia such that Ms. Biocini's life is no longer in danger. Because it is more difficult to modify a permanent injunction, a grant of withholding of removal or Convention Against Torture will not fully vindicate Ms. Biocini's constitutional rights. A permanent injunction is a distinct form of relief from those forms of relief that an Immigration Judge or the BIA may grant.

In *Wang v. Reno*, 81 F.3d 808 (9th Cir. 1996), because Wang's due process claim "does not implicate the INA at all," the court concluded that the district court had jurisdiction over the claim even though Wang had not exhausted his administrative remedies with respect to his excludability. *Id*. at 814. The court explained that "because the INS is not empowered to grant effective relief for the governmental misconduct at issue, it lacks institutional competence to resolve the constitutional issue." *Id*. at 816.

Likewise, Ms. Biocini's claim stems from the violation of her Fifth Amendment Due Process rights. She asserts that Respondent's attempt to remove her violates her substantive due process rights because returning her to Colombia will subject her to a government-created danger. In *Wang*, the Ninth Circuit determined that "Congress could not have intended for the INA to redress constitutional violations when neither the IJ nor the BIA has jurisdiction to hear such claims." *Id.* at 814 n. 8. Because of the inability of ICE to adjudicate the constitutional claims raised by Ms. Biocini, she is not required to exhaust her administrative remedies concerning her removability, nor should 8 U.S.C. § 1252(b)(a) preclude this court from exercising jurisdiction because Congress could not have intended for the claim to be brought in the first instance at the Circuit Court if there is no record upon which to adjudicate. *Id*. at 817. Exhaustion would not have created a useful administrative record, as the IJ and the BIA do not have jurisdiction to hear constitutional claims and thus would have excluded any evidence of the substantive due process claims as irrelevant. *Id.* at 815 n. 10. Moreover, under the INA, the

alien has no right to discovery. Therefore, because her state created danger claim could not have been remedied or litigated at the administrative level, §1252(b)(9) cannot funnel her claim to the circuit court as the consequence of such broad interpretation would make circuit courts fact finders over claims brought in the first instance.

### (3) If This Court Is Divested of Jurisdiction Over the Petition, Such Divestment Would Implicated the Suspension Clause

Moreover, should this court determine that it does not have jurisdiction to hear Ms. Biocini's "state created danger" claim, this will raise substantial Suspension Clause issues. Article I, § 9, cl. 2 of the Constitution provides that: "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." In *INS v. St. Cyr*, the Supreme Court noted that "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 302 (2001). Ms. Biocini's "state created danger" claim is part of her writ of habeas corpus. If neither the Ninth Circuit nor the district court have jurisdiction to hear her claim, Ms. Biocini will be denied her right to habeas corpus. In *St. Cyr,* the Court determined that should Congress withdraw jurisdiction from federal judges over habeas claims without providing an alternative, this would present serious and difficult Suspension Clause issues. *Id*. at 305. Although Congress is empowered to limit the district courts' jurisdiction, both "Congress and the courts are limited…in how they may restrict [the] availability of the writ of habeas corpus." *Brackett v. United States,* 206 F. Supp. 2d 183, 184 n.3 (2002). This writ is constitutionally protected. *Id*.

In the case of *Morgan v. Gonzales*, the district court had transferred Morgan's claim under the state-created danger doctrine to the Ninth Circuit, which determined that Morgan did not have a colorable claim and thus, the court needed not transfer the case back to the district court. *Morgan v. Gonzales,* 495 F.3d 1084 (9th Cir. 2007). Here, Petitioner has raised a colorable constitutional claim stemming out of her assistance to the government and the potential danger of being returned to Colombia as a government informant. Petitioner has not had a chance to have a full and fair hearing on her state-created danger claim. Thus, while the Court

could transfer Petitioner's claim to the Ninth Circuit to transfer the claim back to this Court for fact finding, it would be more judicially efficient for the Court to address the claim in the first instance. Therefore, this Court should exercise jurisdiction over Petitioner's state-created danger claim.

## VII. CONCLUSION

Petitioner Ana Biocini has now been in immigration detention for over two full years, awaiting the outcome of her case. The length of her detention has far exceeded the duration provided by the Supreme Court and the Ninth Circuit. Petitioner respectfully requests that this Court grant Petitioner a writ of habeas corpus and issue a permanent injunction enjoining Petitioner's removal to Colombia.

Dated: April 11, 2008

Respectfully submitted,

_____Holly S. Cooper /s/_____

Holly S. Cooper

Counsel for Petitioner